AUGUST G. MERLE, Respondent, *v.* SOCIOLOGICAL RESEARCH FILM CORPORATION, Appellant, Impleaded with SAMUEL H. LONDON and Others, Defendants.

First Department, January 22, 1915.

Libel — sufficiency of complaint based upon moving picture film entitled "The Inside of the White Slave Traffic," and showing plaintiff's factory, bearing the firm name — moral responsibility of factory owner to keep out vicious persons — use of firm name as incident to picture of building, not a violation of Civil Rights Law, section 50.

A complaint in an action for libel, based upon the production of a moving picture film, entitled "The Inside of the White Slave Traffic," in which the defendant shows a factory and building bearing the plaintiff's firm name, and from which it may be inferred that cadets and white slave traffickers ply their trade and obtain victims at the plaintiff's place of business, and use it as a rendezvous between them and their victims, with an innuendo that the plaintiff permits the traffic to proceed upon his premises, states a cause of action for libel of the plaintiff personally.

The rule as to the moral responsibility of a saloon or restaurant owner to keep out vicious guests, does not apply to a factory owner who has complete control of his premises, and may restrict visitors there in any way he sees fit.

The fact that the film containing the picture of plaintiff's factory included the plaintiff's sign thereon, showing the firm name, did not render the

defendant liable for a violation of section 50 of the Civil Rights Law, in using the plaintiff's name for the purposes of trade without his consent.

In order to constitute a violation of the Civil Rights Law it would be necessary to establish the use of the plaintiff's name in itself for the purposes of trade, and not merely as an incidental part of a photograph of the building.

*It seems,* however, that if the defendant had actually used the plaintiff's name in describing the interior of the factory it might constitute a violation of the statute.

APPEAL by the defendant, Sociological Research Film Corporation, from so much of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 5th day of October, 1914, as overrules its demurrer to the first clause of action contained in the amended complaint herein.

*William F. Unger,* for the appellant.

*Morris Cukor,* for the respondent.

Order affirmed, with ten dollars costs and disbursements, on the opinion of LEHMAN, J., with leave to defendant to withdraw demurrer and answer on payment of costs.

Present — INGRAHAM, P. J., LAUGHLIN, SCOTT, DOWLING and HOTCHKISS, JJ.

The following is the opinion of the court below:

LEHMAN, J.:

The plaintiff in his complaint attempts to set forth two causes of action, both based upon the production of a moving picture film or play entitled "The Inside of the White Slave Traffic," in which the producer depicts a factory and building bearing the plaintiff's firm name of August G. Merle & Co. The defendant has demurred to both causes of action. The first cause of action is for libel, and the only allegations which are, in my opinion, possibly material to a personal action for libel as distinguished from an action for libel of the plaintiff's business are: That the plaintiff does business under the firm name of August G. Merle & Co., has an excellent name and reputa-

tion, and that he employs a large number of hands; that the defendants have produced and exhibited a moving picture film or play called " The Inside of the White Slave Traffic," wherein they purported to portray the life of those engaged or associated in the said white slave traffic, wherever possible showing the actual places where the traffickers operate, and that in said play they showed the building wherein the plaintiff's business is located, and prominently displayed thereon and as part thereof the plaintiff's name and his business sign, "August G. Merle & Co., Infant's and Children's Headwear," and also showed a factory purporting to be located in said building and to be plaintiff's said establishment and factory as places where the said cadets and traffickers plied their vicious trade and obtained victims from among the girls employed in said building and establishment and as places used by said cadets and traffickers as rendezvous between them and the unfortunate victims whom they succeeded in obtaining or procuring in said building and factory; " that the defendants thereby falsely, untruthfully and maliciously charged and intended to charge the plaintiff with being in some way identified or connected with or related to the said white slave traffic or system or with said cadets or traffickers, with allowing or permitting the said trafficking in his establishment or in and around the building wherein his place of business was located, either for gain or otherwise, and that in the said building and in the plaintiff's said establishment there was grave and serious danger for the girls and women and for the young men employed therein, that they might be approached or enticed or seduced or molested by these cadets or white slave traffickers and induced, corrupted, enticed or forced into a life of vice, crime, shame and prostitution, and that in some way plaintiff had knowledge or notice of this condition of affairs and that he participated therein, or at least acquiesced in or countenanced the same." A suit for libel based upon a moving picture production is a somewhat novel proceeding, but there is no doubt that if the production tends to bring a person into disrepute it may give rise to such an action. The serious question in this case is, however, whether the alleged libel is a libel directed against the plaintiff's business or a libel against himself per-

sonally, for concededly the complaint does not contain allegations of special damage sufficient to state a cause of action if the libel is directed only against his business. The distinction between the two classes of cases is pointed out in the case of *Marlin Fire Arms Co.* v. *Shields* (171 N. Y. 384, 390). The rule seems to be that words spoken or written primarily against a man's business cannot give rise to an action for damages without special damage unless they also directly charge the plaintiff with a personal wrong. Whether the picture used in this case does charge the plaintiff personally with any wrongdoing must be determined from the description of the picture itself, and though upon this motion the description of the picture must be taken as true, the reasonable inferences which can be drawn from that picture cannot be extended by innuendo. It seems to me that the only fair inference to be drawn from that picture is that it contains a charge that the plaintiff's place of business is a place where cadets and white slave traffickers ply their vicious trade and obtain victims and is used as a rendezvous between them and their victims, and so far supports at least the innuendo that the plaintiff permits the traffic to proceed upon his premises. It does not, however, charge the plaintiff with actual knowledge of such traffic. The case, therefore, seems to me to come directly down to the question: Does a charge that a place of business where many girls are employed is used as a place where the white slave trade may be recruited and as a rendezvous for cadets and their victims reasonably imply such moral wrong against the owner of the place of business as would bring him personally into general disrepute? It seems to me quite clear that even if we may assume that the owner of the place of business is ignorant of such conditions, yet public opinion would hold him in abhorrence for being so careless of the conditions surrounding the place where his women employees work that evil men can use the place to entice them into vice. Moreover, it would seem that a charge that a business is being carried on in a vicious manner might well reasonably imply that the owner of the business is morally responsible therefor. The defendant, however, relies upon the case of *Kennedy* v. *Press Publishing Co.* (41 Hun, 422), in which it was held that a

charge that the plaintiff's saloon was the resort of improper characters and that the influence of association had there was bad was held not to be a libel on the plaintiff personally, and on the case of *Bosi* v. *New York Herald Co.* (33 Misc. Rep. 622; affd. on opinion below, 58 App. Div. 619), where a similar construction was given to an article charging that the plaintiff's restaurant was a resort favored by anarchists. Both these cases seem to rest upon the principle that a restaurant or saloon keeper is not personally responsible for the character of his guests and that, therefore, the articles affect the plaintiff only in his business, but whatever may be the moral responsibility of a saloon or restaurant owner to keep out vicious guests, the measure of responsibility resting upon a factory owner, who has complete control of his premises and can restrict visitors there in any way he sees fit, is obviously governed by different considerations. It follows that the demurrer to the first cause of action is overruled, with leave to the defendants to withdraw the demurrer and serve an answer within twenty days after notice of entry of order herein. The second cause of action sets forth practically the same facts as the basis of a cause of action for a violation of section 50 of the Civil Rights Law* in that the defendants used the plaintiff's name for the purposes of trade without his consent. It seems to me that no cause of action can be· predicated upon the use made of plaintiff's name in the manner set forth. "The statute is in part at least penal, and should be construed accordingly." (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51.) The use of the plaintiff's name in this case is not for the purpose of obtaining trade or advertisement; apparently it merely appears in the picture because it was placed upon the building which is a part of the picture. Certainly where a man places his sign upon the outside of a building he cannot claim that a person who would otherwise have a right to photograph the building is precluded from using that picture because the sign also appears on the picture. To constitute a violation of the Civil Rights Law I think it must appear that the use of the plaintiff's picture or name is itself for the purpose of trade and not merely an incidental part

---

* See Consol. Laws, chap. 6 (Laws of 1909, chap. 14), § 50; Id. § 51, as amd. by Laws of 1911, chap. 226.— [REP.

of a photograph of an actual building, which cannot be presumed to add to the value of the photograph for trade or advertising, and even a use that may in a particular instance cause acute annoyance, cannot give rise to an action under the statute unless it fairly falls within the terms of the statute. It is true that the complaint also states that the picture showed a factory "purporting" to be located in said building and to be plaintiff's said establishment. If the defendants actually used the plaintiff's name in describing the interior of the factory, and did not merely photograph the exterior, then it might well be that such use would be within the purview of the statute, but I think that the complaint merely sets forth that in some manner from the nature of the pictures the inference arises that the factory belonged to the firm whose name was on the outside, and that the photograph of this sign constitutes the only use of the plaintiff's name. It follows, I think, that the demurrer to the second cause of action should be sustained with leave to the plaintiff to serve an amended complaint within twenty days after notice of entry of order herein. No costs.