LLOYD MOGLEN, Appellant, *v.* VARSITY PAJAMAS, INC., Respondents, et al., Defendants.

First Department, April 25, 1961.

*Maxwell D. Moglen* for appellant.

*Albert A. De Stefano* of counsel (*George A. Katz* with him on the brief; *Becker, Ross & Stone,* attorneys), for Varsity Pajamas, Inc., and others, respondents.

*Nathan Weber* for Brookdale Sport Togs, Inc., respondent.

*Philip Reich* of counsel (*Lopin & Jacobson,* attorneys), for Wernco Fabrics Company, Inc., respondent.

BERGAN, J. In April, 1958 plaintiff, who describes himself in the complaint as the "No. 1 tennis player for Columbia"

College, played and lost a match with one Clinton Wong at a tournament in Kingston, Jamaica. A Kingston newspaper, the *Daily Gleaner,* published an accurate and truthful account of the match.

Defendant Wernco manufactured a fabric which reproduced a portion of the newspaper article; defendant Varsity used the fabric in making underwear and pajamas; and defendant Brookdale used it in making play togs. The other defendants, in turn, offered these products for sale to the public. The action is for a purported invasion of plaintiff's right of privacy (Civil Rights Law, §§ 50–51); and for libel. The complaint has been dismissed at Special Term. We are of opinion the order of dismissal was a correct disposition.

It has been held that a mere incidental commercial use of a person's name or photograph is not actionable under the Civil Rights Law. (*Stillman* v. *Paramount Pictures Corp.,* 5 N Y 2d 994, affg. 2 A D 2d 18, which modified, but affirmed on this point 1 Misc 2d 108.) It seems manifest from the statutory language itself that some meaningful or purposeful use of the name is essential to the statutory cause of action. It is a person whose name " is used  *  *  *  for advertising purposes " or for " the purposes " of trade who has a cause of action (Civil Rights Law, § 51). This has been the sense of the judicial construction of the statutory words (*Rhodes* v. *Sperry & Hutchinson Co.,* 193 N. Y. 223). A good illustration of an incidental commercial use of a name is *Merle* v. *Sociological Research Film Corp.* (166 App. Div. 376).

It would not be easy to conceive any " use " of plaintiff's name that could be more incidental, or so entirely pointless for " advertising purposes " or for the " purposes of trade ", than the use made of it by defendants on the fabric of which plaintiff complains. A swatch of the fabric is attached to the complaint and is in the record before us.

It is a " patchwork " pattern of various bright colors and figures arranged in helter-skelter order; and in the midst of this disarray is the reproduction, in black and white, of an irregular torn-out portion of the *Daily Gleaner.* Printed safety pins purport to attach the " newspaper patch " to the other figures. This occupies probably seven or eight per cent of the area of the fabric. The most prominent printing is the newspaper title; portions of three newspaper articles appear — none so it may be read fully; and among them is a portion of the account of plaintiff's tennis match. It takes close and careful inspection to read that portion of the partially reproduced text that is there, including plaintiff's name.

We are aided in this endeavor by the complaint which sets forth the portion of the text reproduced in the fabric as follows: "A 3-sett victory by Clinton Wong over the * * * Columbia's No. 1 Lloyd Moglen who was abo * * * feature of the Port Maria Lawn Tennis Tou * * * was concluded yesterday afternoon. Victory in the men's singles eventually went to Peter Phillips who showed control and form in beating Paul Standel Wong and Arthur Scholfield in successive rounds; but Wong must get the bouquets for his defeat of Moglen which required 130 minutes. Moglen elected to rely on steadiness".

The use of plaintiff's name in this situation is so clearly incidental as to require a determination as a matter of law that no case for invasion of privacy is shown. The pattern of the newspaper page as a patch in the fabric, taken in its entirety, is incidental to the design of the fabric; and the articles which are in the portion of the page, seem a mere choice of hazard and to have themselves no rational significance in the design or in promoting the sale of the fabric. Even more casual and incidental than the articles is the appearance of plaintiff's name in the text of one of them. The decision in *Flores* v. *Mosler Safe Co.* (7 N Y 2d 276) is not germane to a case of this kind.

Nor is a good case of libel pleaded. It is conceded the article in the *Daily Gleaner* is quite true and accurate; and, of course, its normal reproduction would not be a libel. One ground for libel alleged in the complaint, that the distribution of the plaintiff's name on textiles "is particularly humiliating because it refers to a loss instead of one of plaintiff's many illustrious victories", is quite irrelevant.

There is a further allegation that "the innuendo intended" in using the pattern "with diaper pin clipping torn news item to rest of pattern" is "jocular mendacity". Reading these words in their usual sense, i.e., "innuendo" in the law of libel as suggesting a meaning beyond the surface of the textual language of the offending article, and "jocular mendacity" as a comic falsehood, to the extent we are able to perceive just what is pleaded, we are unable to spell out anything fitting into an actionable pattern of libel.

Finally plaintiff alleges that the common use of this fabric, containing plaintiff's name for pajamas and for girls' sport togs, in juxtaposition to intimate parts of bodies made their use "false and defamatory", a term which has general use in the law of libel but which is not entirely clear in this context.

No special damage is alleged; and since the publication itself is true and something extrinsic, i.e., the manner of reproduction, is the basis of the claim of libel, it is the settled rule in New

York that special damages must be alleged (*O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352; *Nichols* v. *Item Publishers*, 309 N. Y. 596).

It is perhaps possible by a further publication or distribution, so to use a true and accurate publication concerning a person in a manner which will expose him to hatred, contempt or aversion as to be actionable within the frame of the libel concept.

But such a theory is so far removed from the center of gravity of actionable libel that as a very minimal requirement, special damages should be pleaded and established as they would be for a publication, the libelous nature of which depends on extrinsic facts.

The decision in *Burton* v. *Crowell Pub. Co.* (82 F. 2d 154 [C. C. A. 2d, 1936]) turned upon the publication of a grossly distorted photograph of plaintiff — a distortion in the very publication itself; and seems to us to offer no substantial support for holding to be libelous per se the loosely-knit chain of acts in the utilization of an accurate publication upon which this complaint is based.

The orders should be affirmed, with costs.

STEUER, J. (dissenting). The complaint containing two causes of action has been dismissed at Special Term. The first cause of action is to recover for an invasion of privacy based on sections 50 and 51 of the Civil Rights Law. The second cause of action is in libel.

It appears that one of the defendants manufactured a fabric upon which was printed a reproduction of a newspaper article. The appearance of the fabric was intended to and did simulate a piece of newspaper pinned to a piece of cloth by safety pins. The newspaper article in question actually was published and was a report of a tennis match in which the plaintiff was a contestant. While the plaintiff was the loser in the match reported, there is nothing discreditable in the article itself. The fabric was manufactured by the other defendants into pajamas, underwear and play suits. The questions involved are whether such use of the plaintiff's name and such a reference to him gives rise to either of the causes of action pleaded.

Taking first the cause of action based on invasion of privacy, it is clear that the plaintiff's name was used without authorization for a commercial purpose. Unless that use was incidental, a cause of action is indisputably alleged. Whether or not the use was incidental would depend on the degree of significance that the mention of plaintiff had to the purpose intended. Where the article refers to the plaintiff specifically and concerns him, as distinct from where it merely refers to him as an incident of

what the article concerns, the use is not incidental and it may reasonably be inferred in this case that the printing was designed for the sole purpose of soliciting customers for defendants' products (*Flores* v. *Mosler Safe Co.*, 7 N Y 2d 276, 284).

As regards libel, admittedly this is an unusual and distinctive method of publication. It has, however, been generally recognized that the possible modes of publication are infinite (Newell, Slander and Libel [4th ed.], p. 224) and the development of new techniques continuously increases the ways in which publication can be made. The question here presented is whether the particular form of publication holds the plaintiff up to ridicule. It should be noted that the use to which the fabric has been put associates the plaintiff's name with garments of a very intimate nature, and the character of the cloth is undoubtedly intended to make the garments appeal by virtue of an unusual risque appearance. Whether the opportunities for ribaldry coming from the association of the plaintiff's name with such garments would hold him up to ridicule presents a question of fact. In a leading and well-considered opinion a publication having such potentialities was held to give ground for an action for libel (*Burton* v. *Crowell Pub. Co.*, 82 F. 2d 154).

The order dismissing both causes of action should be reversed and the motion to dismiss denied.

VALENTE, J. P., and EAGER, J., concur with BERGAN, J.; STEUER, J., dissents in opinion in which McNALLY, J., concurs.

Orders entered on November 22, 1960, granting defendants-respondents' motions, pursuant to subdivision 4 of rule 106 of the Rules of Civil Practice, to dismiss the amended complaint, affirmed, with $20 costs and disbursements to the respondents.