**Donald Hugh HENLEY, Plaintiff,**

v.

**DILLARD DEPARTMENT STORES, Defendant.**

**No. Civ.A. 3:97–CV–2276–P.**

United States District Court, N.D. Texas, Dallas Division.

Feb. 4, 1999.

---

Robert Everett Wolin, Stephen A. Kennedy, Frederick Linton Medlin of Wolin, Ridley and Miller, LLP, Dallas, TX, for plaintiff.

Robert M. Chiaviello, Dallas, TX, Anna Conyers Kuhn, Austin, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court is Plaintiff Donald Hugh Henley's Motion for Partial Summary Judgment, filed October 30, 1998. After full consideration of the motion, responses and applicable law, for the reasons discussed herein, the Court hereby GRANTS Plaintiff's Motion for Partial Summary Judgment.[1]

### FACTS

This case involves claims of misappropriation of name and likeness, unjust enrichment, trademark dilution under the Lanham Act, and unfair competition under the Lanham Act and the common law. Plaintiff's Motion for Partial Summary Judgment specifically addresses his misappropriation claim, otherwise referred to as a claim for invasion of the right of publicity.

Plaintiff Donald Hugh Henley ("Henley" or "Plaintiff"), is a popular and critically acclaimed rock and roll musician. Pl.'s Compl. at 2. He began his music career in the 1970s as the founder and member of the band *The Eagles*. In the 1980s and 1990s, Henley maintained a successful solo career by continuing to produce platinum albums and perform on tour in concerts around the world. Pl.'s Compl. at 2–3.

On September 3 and 4, 1997, Defendant Dillard Department Stores ("Dillard" or "Defendant") ran a newspaper advertisement for a shirt known as a "henley." Pl.'s App. at 4. The ad features a photograph of a man wearing a henley shirt with the words, "This is Don" in large print, beside the picture, and an arrow pointing toward the man's head from the words. Underneath the words is the statement, "This is Don's henley" in the same size print, with a second arrow pointing to the shirt. The advertisement also included the name of the retailer, "Dillard's", general information about the sale price of the shirts, the name of the shirt's manufacturer, the available sizes and the following: "Sometimes Don tucks it in; other times he wears it loose—it looks great either way. Don loves his henley; you will too." The ad ran in newspapers throughout Texas and in Mexico.

## DISCUSSION

### A. Summary Judgment Standard

Summary Judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89

---

1. On January 28, 1999 both Parties filed a Joint Motion for Leave to File Supplemental Evidence Regarding Plaintiff's Motion for Partial Summary Judgment. Because the Parties filed their motion months past the dispositive motion deadline, (deadline was October 30, 1998), because the Court had already completed this Order and because the Parties' motion was filed on the eve of trial, the Court denies the Parties' motion. However, the Court did review the evidence presented in the motion and concluded that the evidence would not have affected the outcome of its decision.

L.Ed.2d 538 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248–50, 106 S.Ct. 2505; *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir.1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to is case, and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. Right to Publicity

■ The right of publicity is often described as the "inherent right of every human being to control the commercial use of his or her identity." J. Thomas McCarthy, *Melville B. Nimmer and the Right of Publicity: A Tribute,* 34 U.C.L.A.L.Rev. 1703, 1704 (1987); *Elvis Presley Enterps., Inc. v. Capece,* 950 F.Supp. 783, 801 (S.D.Tex.1996). The right to publicity is considered an intellectual property right. McCarthy, *supra,* at 1712. It is a more expansive right than any common law or statutory trademark infringement right because it does not require a showing of likelihood of confusion. *Elvis,* 950 F.Supp. at 801; *Rogers v. Grimaldi,* 875 F.2d 994, 1003–04 (2d Cir.1989); *see* McCarthy, *supra,* at 1708–09.

■ The tort of misappropriation of one's name or likeness is generally referred to as the "Right of Publicity" and is based on section 652C of the Restatement of Torts which reads, "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652C (1977); *Matthews v.. Wozencraft,* 15 F.3d 432, 437 (5th Cir.1994). The Fifth Circuit has specifically identified three elements a plaintiff must prove to recover for the tort of misappropriation of name and likeness in Texas: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *Matthews,* 15 F.3d at 437.

■ The right of publicity is designed to protect the commercial interests of celebrities in their identities. *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 835 (6th Cir.1983). It is intended to protect the value of a celebrity's notoriety or skill. *Matthews,* 15 F.3d at 437. Because a celebrity's identity can be valuable in the promotion of products, "the celebrity has an interest that may be protected from the unauthorized commercial exploitation of that identity." *Carson,* 698 F.2d at 834. Such celebrities have an exclusive legal right to control and profit from the commercial use of their name, personality and identity. *Id.* "If the celebrity's identity is commercially exploited, there has been an invasion of his right whether or not his 'name or likeness' is used." *Id.* (court suggests that comedian Johnny Carson's identity may be exploited when neither his name, John W. Carson, nor his picture is used.). The tort does not protect the use of the celebrity's name per se, but rather the value associated with that name. *Matthews,* 15 F.3d at 437.

■ Typically, the defendant in a Right to Publicity case has " 'appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of his name

or likeness.'" *Matthews,* 15 F.3d at 437 (citing Restatement § 652C cmt. c). A person's right of publicity may be violated when a defendant employs an aspect of that person's persona in a manner that symbolizes or identifies the person, "such as the use of a name, nickname, voice, picture, performing style, distinctive characteristics or other indicia closely associated with a person." *Elvis,* 950 F.Supp. at 801. Such appropriation generally becomes actionable when it is used to "advertise the defendant's business or product." *Matthews,* 15 F.3d at 437 (citing Restatement § 652C, cmt. b); *Elvis,* 950 F.Supp. at 801. A violation can occur simply in the use of a phrase that clearly identifies the celebrity. *Elvis,* 950 F.Supp. at 801; *see Carson,* 698 F.2d at 836. It is not fatal to a plaintiff's claim that the defendant did not use the plaintiff's 'name.' *Carson,* 698 F.2d at 837.

**1. Did Defendant Appropriate the Plaintiff's Name or Likeness for the Value Associated with it, and not in an Incidental Manner or for a Newsworthy Purpose?**

█ The threshold issue to determine in analyzing this element is whether Defendant actually appropriated Defendant's name or likeness. Plaintiff maintains that Dillard used Don Henley's name by using the expression "Don's henley." Pl.'s Mot. for Summ. J. at 10–13. In the alternative, Plaintiff argues that, at a minimum, Plaintiff's likeness and identity were appropriated by Dillard for its advertisement. *Id.* at 13–22. Defendant insists that whether it appropriated Plaintiff's name or likeness is an issue for a jury, not the Court, to determine. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 2–5.

While use of the expression "Don's henley" is arguably the use of Plaintiff's name, a genuine issue of fact exists as to whether that expression is, indeed, Plaintiff's name. However, Courts have recognized that a defendant may be held liable for using a phrase or image that clearly identifies the celebrity, in addition to finding liability for using a plaintiff's precise name. *White v. Samsung Elecs. Am., Inc.,* 971 F.2d 1395 (9th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993) (ad depicting a robot, dressed in a wig, gown, and jewelry and posing next to game show Wheel of Fortune set, violated Plaintiff Vanna White's right of publicity); *Carson,* 698 F.2d 831 (use of the phrase "Here's Johnny" in the name of defendant's corporation, and the phrase "World's Foremost Commodian" in its slogan, violated Plaintiff's right of publicity); *Motschenbacher v. R.J. Reynolds Tobacco Co.,* 498 F.2d 821 (9th Cir.1974) (use of photo of distinctive race car of well known professional race car driver, whose name and likeness were not used, violated his right of publicity); *Ali v. Playgirl, Inc.,* 447 F.Supp. 723 (S.D.N.Y.1978) (use of drawing of nude, black, male sitting on stool in corner of boxing ring captioned "Mystery Man," but also identified as "The Greatest," violated right to publicity); *Hirsch v. S.C. Johnson & Son, Inc.,* 90 Wis.2d 379, 280 N.W.2d 129 (1979) (use of term "Crazylegs" on women's shaving gel violated defendant's right to publicity because that term was the nickname of defendant, a famous football player). Because the use of the expression "Don's henley" is so clearly recognizable as a likeness of Plaintiff, the Court finds that no reasonable juror could conclude that the phrase "Don's henley" does not clearly identify the Plaintiff, Don Henley.

Defendant argues that the issue of whether Defendant appropriated Plaintiff's name or likeness is a question of fact, and thus, such determination is within the province of the jury, not the Court. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 2–5. Defendant argues that because the Court held, in its Order on Defendant's Motion to Dismiss / Motion for Summary Judgment, that "there are clear fact issues with respect to whether Dillard appropriated plaintiff's name or likeness and whether plaintiff can be identified from the ad,"

that this Court is now precluded from concluding that no reasonable juror could find that a fact issue exists based on the standard applicable to Plaintiff's Motion for Summary Judgment. *Id.* at 3; Order of May 12, 1998. Defendant is incorrect. The Court was deciding, in its May 12 Order, an issue based on a standard different from this Order. In Defendant's Motion for Summary Judgment on which the May 12 Order was based, Henley was required to come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Plaintiff was required to provide specific facts that showed that his case presented a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Court was reviewing the summary judgment motion based on that standard and was determining whether Plaintiff had, at a minimum, enough evidence of appropriation that a jury might return a verdict in his favor. The Court concluded that Henley did present enough evidence to defeat the motion and thus, that Plaintiff had proven, at a minimum, that a fact issue existed as to whether Dillard appropriated Henley's name or likeness.

Defendant takes the Court's statements out of context when it attempts to apply the Court's language to the present motion. The motion now before the Court requires the Defendant to present evidence that a genuine fact issue exists as to whether Defendant appropriated Plaintiff's name or likeness. Therefore, an entirely different issue and analysis is now before the Court, and based on Defendant's evidence, the Court concludes that there is no genuine fact issue in dispute as to whether Defendant appropriated Plaintiff's name or likeness.

The second issue the Court must resolve is whether Defendant appropriated Plaintiff's name or likeness *for the value associated with it,* and not in an incidental manner. Defendant argues that "there has been no evidence presented that Dillard chose to use the wording 'Don's henley' in order to capitalize on the alleged value of the name Don Henley." Def.'s Resp. to Pl.'s Mot. for Summ. J. at 5. The Court disagrees, and in fact, finds that Defendant has presented no reasonable evidence to defeat Plaintiff's summary judgment motion. Plaintiff presents uncontroverted deposition testimony from Lisa M. Robertson, the creator of the print advertisement, admitting that use of Don Henley's 'name' was intended to make the ad more interesting. Robertson Dep. at 33. She, like the Defendant in *Carson,* intended to use the expression as a "play on words" and intended consumers to recognize this advertisement as a "wordplay" on the name "Don Henley." *see Carson,* 698 F.2d at 833; Robertson Dep. at 33, 35–36.[2] In

---

**2.**

Q: Well, what prompted you to come up with the idea "This is Don. This is Don's Henley"?

A: Well, I was trying to find a play on words to use for the ad.

Robertson Dep. at 33.

Q: And there's no doubt that when you were using the words "This is Don. This is Don's henley," the Don Henley wordplay meant Don Henley the recording artist, not some other person named Don Henley?

A: "Well, obviously the name—yes, I mean I knew it was Don Henley; that was where it came from. But it wasn't, you know, to imply that he was a part of it."

Q: I think you said earlier that by using the word—by using the headline "This is Don. This is Don's henley," you intended a wordplay, correct?

A: Yes.

Q: "And so it was your intention for consumers to recognize this advertisement as a wordplay."

A: Yes.

Q: And for the wordplay to work, the consumer had to recognize the name Don Henley, right?

A: Well, you'd have to know who he was to get it, yes.

Q: So for it to work or for them to get it, they must recognize the similarity between

other words, Defendant admitted that she did not intend potential consumers to perceive the ad as depicting an anonymous man named "Don." She intended for them to associate the expression "Don's henley" with the Plaintiff Don Henley. Furthermore, Debra L. Green, the ad's designer, admitted that she believed the expression "Don's henley" would catch the consumers' eye because of its similarity to the name "Don Henley." [3] Therefore, Defendant admits Dillard used the play on words, "Don's henley" to attract consumers as they associated the expression and the ad with Plaintiff Don Henley. In other words, they used the value associated with Don Henley's identity and personality in order to attract consumers' attention.

Defendant presents testimony from Dillard's Vice President of Sales Promotion, William B. Warner, suggesting that the use of the words "Don's henley" adds no value to the advertisement.[4] Warner testified that he believes there is no value associated with the expression "Don's henley," and that the singular and sole purpose of choosing and printing that phrase was "fun." Warner Dep. at 95. In fact, Defendant argues, the use of the expression, "Don's henley" was incidental to the primary focus of the advertisement. The portions of the ad that were of "chief importance" were the "handwritten text and arrows ... the visual presentation of information." Def.'s Mot. for Summ. J. at 5–6; Warner Dep. at 94–95.

All evidence and the *reasonable* inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (emphasis added). When presented with two alternative inferences urged from the same body of basic fact, the Court must identify whether only one or both of them are reasonable. *United Mortgage Corp. v. Mathern,* 137 B.R. 311, 322 (D.Minn.1992). The Ninth Circuit held that "[a] party opposing summary judgment is entitled to the benefit of only reasonable inferences that may be drawn from the evidence put forth." *Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 680 (9th Cir.1985). If a summary judgment movant has produced "overwhelming" basic evidence to support its asserted inference, and the respondent has failed to produce significantly probative evidence countering the inference, it may be unreasonable to draw an inference contrary to the movant's interpretation of the facts. *Mathern,* 137 B.R. at 322. A court may grant summary judgment in such a case, even when subjective factors such as motive or intent are the fact issue in question. *Id.; Barnes,* 759 F.2d at 681.

Plaintiff asks the Court to infer from the testimony of Defendant's own ad creators, Ms. Green and Ms. Robertson, that Defendant appropriated Plaintiff's name or likeness for the value associated with it (i.e. used the wordplay to catch the consumer's eye and make the ad more interesting). Pl.'s Mot. for Summ. J. at 3–6; Pl.'s Reply

the words "This is Don. This is Don's henley" and the name of the recording artist Don Henley, correct?

A: Yes.

Robertson Dep. at 35–36.

3. Q: Do you think that the words "Don's," apostrophe "s," "henley" would catch a consumer's eye?

A: I think the sound of them reading it would repeat the sound of—I think that that would in some way associate with Don.

Q: Well, my question is would it have caught your average consumer's eye, the use of the words "Don's henley"?

A: I think so.

Green Dep. at 36.

4. Q: Did the words—in your opinion, do the words "Don" and "Don's henley" help make the ad more effective?

A: I think not. I think they make it fun, but not necessarily in any way that would actually make it more effective from the standpoint of achieving what a good ad is intended to achieve.

Q: Was it you opinion that the words "Don" and "Don's henley" add no value at all to the ad?

A: That's my basic opinion.

at 9. Defendant asks the Court to infer from Warner's testimony that Dillard used the word's "Don's henley" for "fun," not because the words attracted the attention of consumers. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 5. The Court finds it unreasonable to draw the inference Defendant requests. Defendant's evidence could not lead a reasonable jury to conclude that the use of the words "Don's henley" was for any purpose other than to attract the attention of consumers.[5]

Defendant also insists that its use of the phrase "Don's henley" was incidental to the handwritten style of the text and arrows. " '[O]ne of the primary purposes of advertising is to motivate a decision to purchase a particular product or service. The first step toward selling a product or service is to attract the consumers' attention.' " *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 693 (9th Cir.1998). Defendant's use of the message "This is Don. This is Don's henley." in large letters, centered in the print ad was clearly and admittedly intended to attract the consumers' atten-

tion. The Court is hard pressed to believe that a reasonable jury could conclude that the size and style of the letters, rather than the message created with those letters, are the focus of the ad. No reasonable jury could conclude that the use of the word play was merely incidental to the advertisement.[6]

## 2. Can the Plaintiff be Identified from the Publication?

The second element Plaintiff must satisfy to prove an infringement of the Right of Publicity, is that "plaintiff as a human being must be 'identifiable' from the total context of the defendant's use." J. Thomas McCarthy, 1 *The Rights of Publicity & Privacy* § 3.2 (1998) (McCarthy II). While there are many ways a plaintiff can be identified in a defendant's use, the most obvious is use of a name that distinguishes the plaintiff. *Id.* "Identifiability of plaintiff will probably not be a disputable issue in the majority of meritorious Right of Publicity cases." *Id.* This is due to the

---

Warner Dep. at 95.

**5.** *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[S]ummary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Monsanto Co. v. Spray–Rite Svc. Corp.*, 465 U.S. 752, 768, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984) (to survive summary judgment there must be evidence that "reasonably tends to prove" [defendant's] theory); *First Nat'l Bank of Az. v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (plaintiff meets his burden under Rule 56(c) when he "conclusively show[s] that the facts upon which [the defendant] relied to support his allegation were not susceptible of the interpretation which he sought to give them"); *Eastman Kodak Co. of N.Y. v. Southern Photo Materials Co.*, 273 U.S. 359, 375, 47 S.Ct. 400, 71 L.Ed. 684 (1927). *See also H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir.1989) ("[O]nly reasonable inferences can be drawn from the evidence in favor of the nonmoving party"); *Arnold Pontiac–GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3d Cir.1987) (*Matsushita* directs us " 'to consider whether the inference of conspiracy is reasonable' ").

**6.** Examples of cases where "incidental use" was found by the court include the following: "Incidental use" was found where a motion picture showed a factory building upon which there was a sign bearing the name and business of the plaintiff. *Merle v. Sociological Research Film Corp.*, 166 A.D. 376, 152 N.Y.S. 829 (1 Dept. 1915)). The court held that no violation of the New York statute had taken place, since in order to constitute such a violation, it must appear that the use of plaintiff's picture or name is itself for the purpose of trade and is not merely an incidental part of a photograph of an actual building.

The court in *Moglen v. Varsity Pajamas, Inc.*, found an "incidental use" where a newspaper article reporting plaintiff's loss of a tennis match was partly reproduced, together with other articles, as a patchwork pattern in a fabric which defendants manufactured and sold for use in underwear, pajamas, and play togs. The court held that such use did not meet the requirement of a meaningful or purposeful use of a name, since the pattern of the newspaper page as a patch in the fabric was only incidental to the design of the fabric and the appearance of plaintiff's name in the article was an even more casual and incidental use. 13 A.D.2d 114, 213 N.Y.S.2d 999 (1 Dept. 1961).

fact that defendants will usually make the plaintiff's identity as identifiable as possible so as to draw the maximum amount of attention to the defendant's product. *Id.* "The intent, state of mind and degree of knowledge of a defendant may shed light on the identifiability issue." *Id.* "To establish liability, plaintiff need prove no more than that he or she is reasonably identifiable in defendant's use to more than a de minimus number of persons." *Id.* § 3.4[A].[7]

Defendant argues that identifiability is a question of fact and thus, the question of whether Plaintiff is identifiable from Defendant's ad should be posed to the finder of fact. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 8. The Court agrees that the issue of identifiability is a question of fact, however, Defendant must defeat Plaintiff's Motion for Summary Judgment before the issue can be posed to the factfinder. This is where Defendant's logic flounders.

The Court finds that the issue of identifiability is indisputable in this case because Defendant has offered no evidence to suggest that Plaintiff is not identifiable from the ad. Plaintiff's survey evidence indicates that sixty-five percent of survey respondents believed there was a spokesperson or endorser in the ad. Lefkowitz Aff. ¶ 12. Of those who said there was a spokesperson or endorser, twenty-three percent said the spokesperson or endorser was Don Henley. *Id.* at ¶ 13.[8] In other words, fifteen percent of those asked believed Don Henley was a spokesman for or endorser of the ad, and thus, necessarily identified him from the ad. The results of this survey clearly prove that Don Henley was reasonably identifiable in Defendant's ad to more than a de minimus number of persons.

Further, in evaluating the intent and state of mind of Defendant, the evidence is undisputed that Defendant intended to appropriate Don Henley's identity and intended that consumers associate the ad with Don Henley. First, as stated *supra,* the creators of the ad admitted they intended consumers to associate Don Henley with the ad. Robertson Dep. at 35–36. Second, the Defendant intended to appropriate the image of performing artist Don Henley, not some other, anonymous person by that same name. This is proven by Plaintiff's evidence that the ad creators drafted an earlier version of the ad that added quotes or paraphrases from eight Don Henley song titles to the ad at issue.[9] *Id.* at 34. The Court concludes that there is no fact issue from which a reasonable jury could conclude that Plaintiff was not identifiable from the ad.

### 3. Was there an Advantage or Benefit to Defendant?

Defendant insists that Plaintiff cannot prove a benefit inured to Dillard because

---

**7.** "Unlike trademark law, which requires a significant percentage of potential customers be likely to be confused, there should be no particular quantum of people who in fact identified plaintiff from defendant's use." McCarthy II, *supra,* § 3.4[A].

**8.** It is arguable that, had the respondents been shown Defendant's ad and been asked "Who do you think is identified in this ad?" a different result would have occurred. In order to name Don Henley as the spokesperson or endorser of the ad (as the question was asked by the surveyor), the surveyees were required to believe the ad was, in fact, endorsed by Henley. Had the surveyees been asked the question "Who do you think is identified in this ad?" it is likely that the number responding "Don Henley" would

have increased due to the fact that they would not have been required to believe he endorsed the product or gave his permission to have his name or likeness used in the ad. They would only have been required to believe he was identifiable from the ad. *See* McCarthy II, *supra,* § 3.4[E].

**9.** The ad, in draft form read, "If *all you want to do is dance* / pick up your *witchy woman* / *take it to the limit* in our cotton henley. We promise, you've spent your *last worthless evening!* Give her the *best of your love,* and when the party's over, toss our machine washable henley right in the *dirty laundry.* In *the long run,* you'll love the great colors and the super-sturdy construction. But hurry in, they may be *already gone.*" Pl.'s App. at 57 (emphasis added).

the sales generated by the ad were not sufficient to cover the costs of running the ad. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 9–10. Plaintiff argues that the Court need consider no more than the fact that the ad was created with the belief that the use of the words "Don's henley" would help sell its product. Pl.'s Mot. for Summ. J. at 23.

In *Matthews,* the Fifth Circuit Court of Appeals decided the plaintiff's Right to Publicity claim by analyzing each factor with guidance from the applicable Restatement comments. *Matthews,* 15 F.3d at 437. The Court looked to comment d of Restatement (Second) of Torts § 652C for guidance when analyzing the "benefit to defendant" factor. *Id.* Comment d reads: "It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or likeness that the right of privacy is invaded." Restatement § 652C cmt. d. Comment d further suggests that the notion that a benefit must inure to the defendant is intertwined with the factor requiring that the plaintiff prove the defendant appropriated the plaintiff's name or likeness for its value and not for an incidental use. *See id.* The "benefit" element requires Plaintiff to prove that Defendant derived some commercial benefit from the use of plaintiff's name or likeness as opposed to deriving no commercial benefit due to the fact that the use was incidental. *See id.*

The Restatement illustrates the type of benefit Defendant must receive to be liable under this factor and describes what does not constitute a "benefit" to the defendant. *Id.* "*A* writes and publishes an autobiogra-

phy in which at several points, he names *B* as one of his friends." This is not an infringement of the right to publicity. Also, "*A* makes and exhibits a motion picture, one scene of which shows a view from a city rooftop. Prominent in the foreground is a factory, with *B* 's name on the side of it." This also is not an invasion of *B* 's right to publicity. *Id.*[10] While these examples describe what are and are not "benefits" for purposes of the "benefit" factor, they are also examples of incidental use. If a defendant appropriates a plaintiff's name or likeness for his own commercial advantage, he necessarily derives a benefit from its use.

The District Court of the District of Columbia elaborated on the requirement that a plaintiff prove that the defendant received a benefit from the use of the plaintiff's name or likeness in *Polsby v. Spruill,* No. Civ. 96–1641(TFH), 1997 WL 680550, at *4 (D.D.C. Aug.1, 1997). The court first noted that "the mere fact that the [ad] was published and the defendant[ ] intended to make a profit from the [ad] is not enough to constitute commercial benefit." *Id.* Defendants must use "the name or likeness for the express purpose of appropriating the commercial benefit that is particularly associated with the name or likeness of the plaintiff." *Id.* (citing Restatement § 652C cmt. d). Thus, this element focuses on Defendant's intent. *Id.; see Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 811 (9th Cir.1997). As Dillard's own employees admitted, Dillard used the wordplay, and thus, Plaintiff's name or likeness, to catch the eye of the consumer and make the ad more interest-

10. Other illustrative examples include a case where patrons of a dog racing track sued when their photos appeared in a photograph that was used in a track advertising brochure. *Schifano v. Greene County Greyhound Park, Inc.,* 624 So.2d 178, 179, 181 (Ala. 1993). The court held that there was no value in their likenesses from which Defendants could receive commercial benefit. Another case in which there was no benefit to Defendant was *Cox v. Hatch,* where three

postal workers sued an incumbent Senate candidate for using their picture in a campaign advertisement. 761 P.2d 556, 565 (Utah 1988). Because the plaintiffs' picture did not have intrinsic value, they could not be appropriated for Defendant's benefit, especially when the plaintiffs were not identified or named and the photo was merely intended to show the candidate in the company of workers. *Id.*

ing. Robertson Dep. at 33; Green Dep. at 36.

The plaintiff in a right to publicity action is not required to show that the defendant made money off the commercial use of the name or likeness, as Defendant suggests. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 8–10. It is immaterial that Defendant made little profit after the ad ran, only ran the advertisement once, and received no feedback on the ad. *Id.* What Plaintiff must prove is that Defendant received a commercial benefit from use of Plaintiff's name or likeness that, without Plaintiff's image, he would not otherwise have received. Defendant's sophisticated and experienced ad creators described the benefit they received as being able to catch the eye of the consumer and make the ad more interesting. Robertson Dep. at 33; Green Dep. at 36. By appropriating Plaintiff's name or likeness, Defendant received the benefit of a celebrity endorsement without asking permission or paying a fee.[11]

To reiterate an earlier point, the Right of Publicity cause of action exists to protect a celebrity's identity, which can be valuable in the promotion of products. *Carson,* 698 F.2d at 835. Such celebrities have an exclusive legal right to control and profit from the commercial use of their name, personality and identity. *Id.* Requiring Plaintiff to prove Defendant's ad was profitable was not contemplated by the drafters of the Restatement, nor has it been suggested by the Fifth Circuit or the Ninth Circuit, the appellate court most frequently confronted with this issue.[12] Further, one of the foremost legal commentators on the Right of Publicity, J. Thomas McCarthy, in his well known and oft-cited treatise, never suggests that the *Matthews* case requires a plaintiff to prove

that a defendant made a profit or secured a tangible benefit. *See* McCarthy II, *supra,* §§ 2.3, 6.12, 8.8, 8.9. Dillard has asked the Court to adopt its interpretation of "benefit," yet offers no legal authority in support of its request. The Court, thus, refuses to require a plaintiff to prove that a defendant made a profit or secured a tangible benefit from use of the plaintiff's name or likeness.

As Plaintiff points out, there is no evidence to suggest that the Court in *Matthews* requires Plaintiff to prove that Defendant's use of Plaintiff's name or likeness in his sales promotion "worked" for the infringer. Pl.'s Reply at 11. Defendant should not be shielded from liability because "the product promoted is undesirable, the ad [is] clumsy or somehow ineffective, or sales slump[ed] during the relevant time period." *Id.* Rather, Dillard should be held liable because it received a benefit by getting to use a celebrity's name for free in its advertising. Whether or not the advertising worked for Dillard is wholly irrelevant. The Court concludes that there is no fact issue from which a reasonable jury could conclude that Defendant did not receive a benefit from its use of Plaintiff's likeness.

Accordingly, for the reasons stated herein, Plaintiff Henley's Motion for Partial Summary Judgment is hereby GRANTED.

So ORDERED.

---

11. Defendant does not dispute that Plaintiff is a celebrity. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 9.

12. *See, e.g., Wendt v. Host Int'l, Inc.,* 125 F.3d 806 (9th Cir.1997); *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093 (9th Cir.1992); *White v. Sam-*

*sung Elecs. Am., Inc.,* 971 F.2d 1395 (9th Cir.1992); *Midler v. Ford Motor Co.,* 849 F.2d 460 (9th Cir.1988); *Motschenbacher v. R.J. Reynolds Tobacco Co.,* 498 F.2d 821 (9th Cir. 1974).