ACCEPTED
05-13-01503-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
1/13/2015 3:31:15 PM
LISA MATZ
CLERK

# IN THE TEXAS COURT OF APPEALS
## FOR THE FIFTH DISTRICT AT DALLAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
1/13/2015 3:31:15 PM
LISA MATZ
Clerk

STEPHEN W. CLARK, §
§
   Appellant, §
§
v. §
§     No. 05-13-01503-CV
§
DILLARD'S, INC. and §
THE CAMPBELL §
AGENCY, INC., §
§
   Appellees. §

On Appeal from the 44th Judicial District Court of Dallas County, Texas
Cause No. DC-11-12848

## APPELLANT'S AMENDED OPENING BRIEF AND APPENDIX

**KENNEDY LAW, P.C.**
Stephen A. Kennedy
Texas Bar No. 11300425
1445 Ross Ave., Suite 4950
Dallas, TX 75202
Telephone: (214) 716-4343
Facsimile: (214) 593-2821

Counsel for Appellant

## ORAL ARGUMENT REQUESTED

i

# IDENTITY OF PARTIES AND COUNSEL

Appellant tenders this list of all parties and counsel to the trial court's judgment to assist this court in determining qualification and recusal under Rule 38 of the Texas Rules of Appellate Procedure:

**Appellant: Stephen W. Clark**

*Counsel in the Court of Appeals:*
Stephen A. Kennedy
KENNEDY LAW, P.C.
1449 Ross Ave., Suite 4950
Dallas, TX 75202

Kristen E. Knauf
KENNEDY LAW, P.C.
1449 Ross Ave., Suite 4950
Dallas, TX 75202

*Counsel in the Trial Court:*
John B. Rizo, Sr.
LAW OFFICE OF JOHN B RIZO, SR.
3214 Samuell Blvd.
Dallas, TX 75223

Kenneth P. Kula
Kennedy Clark & Williams, P.C.
1700 Pacific Ave., Suite 1280
Dallas, TX 75201

**Appellee: Dillard's, Inc.**

*Counsel in the Trial Court and Court of Appeals:*
Ophelia Camina
Susman Godfrey LLP
901 Main St., Suite 5100
Dallas, TX 75202-3775

*Counsel in the Trial Court*
David D. Wilson
Friday, Eldredge & Clark
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522

Patricia A. Nolan
The Law Offices of Patricia A. Nolan
1701 N. Market Street
Suite 200, LB 42
Dallas, Texas 75202

**Appellee: The Campbell Agency, Inc.**

*Counsel in the Court of Appeals:*
Brian A. Sheguit
The Bassett Firm
Two Turtle Creek Village
3838 Oak Lawn Ave, Suite 1300
Dallas, TX 75219

*Counsel in the Trial Court:*

Michael J. Noordsy
The Bassett Firm
Two Turtle Creek Village
3838 Oak Lawn Ave, Suite 1300
Dallas, TX 75219

J. Andrew Robertson
The Bassett Firm
Two Turtle Creek Village
3838 Oak Lawn Ave, Suite 1300
Dallas, TX 75219

**Trial Court Judge:**

Hon. Eric V. Moyé
14th Judicial District Court, Dallas County, Texas

Hon. Carlos Cortez
44th Judicial District Court, Dallas County, Texas

# TABLE OF CONTENTS

Table of Contents ..........................................................................................v

I.   ISSUES PRESENTED FOR REVIEW ......................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 2

III. ARGUMENT ........................................................................................ 7

   A.   THE COURT ERRED IN DENYING CLARK'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON MISAPPROPRIATION OF LIKENESS. .............. 7

     1.  Standard of Review .................................................................. 7

     2.  Appellant Established that He was Entitled To Summary
Judgment as a matter of law ........................................................ 9

     a.  Defendants appropriated Clark's likeness for the value
associated with it ....................................................................... 10

     b.  It is undeniable that Clark can be and is identified
through the publication .............................................................. 13

     c.  Appellants obtained a benefit from appropriating Clark's
likeness ..................................................................................... 14

   B.   THE COURT ERRED IN GRANTING IN PART DILLARD'S MOTION
FOR SUMMARY JUDGMENT, DISPOSING OF SEVERAL CLAIMS AND
REMEDIES FOR DAMAGES. ................................................................. 16

   C.   THE COURT ERRED IN GRANTING TCA'S MOTION FOR SUMMARY
JUDGMENT, DISMISSING IT FROM THE CASE. ....................................... 22

     1.  The District Court Erred By dismissing TCA on
arguments that TCA did not advance in its Disclosures. ...... 23

     2.  Issues Concerning Breach of Fiduciary Duty .................... 24

     3.  Issues Pertaining to Breach of Contract Claim ................. 27

     4.  Issues Pertaining to the Statute of Limitations and
Laches Affirmative Defenses ...................................................... 28

5. **TCA Has Failed to Carry its Burden as to The Discovery Rule.** ..................................................................32

D. **IT WAS ABUSE OF DISCRETION TO CONSTRUCTIVELY STRIKE APPELLANT'S EXPERT THE DAY BEFORE TRIAL.** ...................................33

1. **Dillard's First Motion to Strike Plaintiff's Expert**.............34

a. **Plaintiff Timely Identified Dr. Sealey** ..................................35

b. **No Expert Report Could Be Generated**..............................37

c. **The Standard in Texas for the Admission of Expert Opinion Evidence** ..................................................................38

d. **The Qualifications of Dr. Peter Sealy**..................................38

2. **Dillard's Second Motion to Strike Plaintiff's Expert** ........40

E. **THE COURT FAILED TO TAKE JUDICIAL NOTICE OF PAST PLEADINGS.** ................................................................................40

1. **The Campbell Agency's Motion for Summary Judgment**.42

2. **The Motion for Summary Judgment Granted in the Henley Litigation** ........................................................................44

F. **DESPITE APPELLANT'S CLEAR PLEA FOR ANY AND ALL DAMAGES PERMISSIBLE UNDER TEXAS LAW THE COURT REFUSED TO CONSIDER DISGORGEMENT OF PROFITS.** ............................................................45

G. **THE COURT OVERRULED APPELLANT'S OBJECTIONS TO JURY QUESTIONS THAT WERE INCORRECT AS A MATTER OF LAW AND WERE INTERNALLY INCONSISTENT.**...........................................................46

Conclusion ...........................................................................................48

Certificate of Service ..........................................................................50

## I. ISSUES PRESENTED FOR REVIEW

On July 16, 2013, the Court called this case for trial; the parties closed the evidence on July 18, 2013; and, on July 19, 2013, the jury returned a verdict. The Court entered a Final Judgment on August 5, 2013.[1] In the Final Judgment, the Court entered judgment for Appellant, Stephen Clark ("Appellant" or "Clark") on his unjust enrichment claim which resulted in an actual damages award of $4,500.[2] The Court ordered that Clark take nothing on his misappropriation of likeness claim against Dillard's Inc. ("Dillard's").[3] Clark filed a Motion for New Trial on August 30, 2013.[4] After oral argument The Motion for New Trial was denied on October 2, 2013.[5]

The issues presented for appeal fall into two categories: rulings by the district court on summary judgment motions, which are evaluated under a *de novo* standard, and rulings made on specific motions issued prior to and during trial, which are considered under an abuse of discretion standard.

---

[1] Final Judgment, Appendix at 2249; 2 CR 514-516.
[2] Id.
[3] *Id.*
[4] Plaintiff's Motion for New Trial, Appendix at 2139; 2 CR 589-695.
[5] Order re: Motion for New Trial, Appendix at 2247; 2 CR 729.

The *de novo* issues subject to this appeal include the trial court's rulings (1) denying Plaintiff's motion for summary judgment on misappropriation of likeness, (2) granting in part two of Dillard's motions for summary judgment dismissing several claims from the suit, and (3) granting TCA's motion for summary judgment, dismissing it from the case.

The other issues involve (1) the district court's decision to strike Clark's damages expert the day before trial because he failed to provide an expert report, which is not required under the Texas Rules, (2) failing to take judicial notice of three matters relevant to enhanced damages, and (3) issuing inconsistent and incorrect jury instructions on the issue of misappropriation of likeness.

## II. STATEMENT OF FACTS

This is a case about an international model whose images were used by a department store as the face of its men's underwear package. In that situation, the model's agent communicates directly with the model to determine whether the model is available and is willing to accept the booking. The model is paid two fees: a "day rate" for a photo shoot, and additional compensation for specifically enumerated usage

rights, which are released to the client. The usage rights are documented in writing. The model may use a one-page carbon paper "voucher" to release specific rights to use his image. The voucher includes a number of individual and specific usage rights available for selection by the model. The usage rights that the model may select include fashion shows, billboards, point of purchase, informal, national ad and product packaging. In other instances, a multipage contract is used to secure the model's release. Examples of a voucher and multipage contract are attached in the Appendix.[6]

In addition to securing the model's release, the client must get a second release from the photographer, who owns the copyrights to the photography. The photographer typically sends an invoice to the client for the copyrights released. The invoice includes a release valid upon payment of the invoice. An example of the second invoice is part of the Appendix.[7]

In this controversy, and as explained more fully below, Clark, was the model,[8] The Campbell Agency, Inc. ("TCA") was the agency,[9] the

---

[6] Appendix at 1631 and 1466; 1 CR 847, 1536
[7] Appendix at 1066; 1 CR 678.
[8] Appendix at 142; CR Supp Vol. 3 at 43-44.

client was Dillard's[10] and the photographer was Mollie McKool Photography, Inc. ("McKool")[11]

For the better part of two decades, Clark had a successful career that took him across the globe.[12] His livelihood depended on third parties paying him for specific usage rights for his image to sell clothing, men's fragrances, and related personal accessories.[13] Within the first few years of his career, Clark was hired to model in advertising campaigns for high profile clients such as J. Crew, Giorgio Armani, Christian Dior, and Chanel.[14] Additionally, he worked with some of the most respected photographers in the world, including Patrick Demarchilier, Karl Lagerfeld, Aldo Fallai, Victor Skrebneski, Aldo Rossi and Neil Kirksuch.[15] Further, Clark was the face of Hanes underwear pursuant to a multipage agreement for product packaging with Hanes.[16]

TCA is a talent agency that represents models, actors and other

---

[9] Appendix at 143; CR Supp Vol. 3 at 43-44.
[10] Id.
[11] Appendix at 368, 968; CR Supp Vol.2 at 52, 1 CR 580.
[12] Plaintiff's Response to The Campbell Agency's Traditional and No-Evidence Motion for Summary Judgment dated November 26, 2012, App. at 876; 1 CR 488.
[13] Appendix at 875; 1 CR 487.
[14] *Id.* and 1536 – 1590; 1 CR 487, RR Vol. 12 at 24-85
[15] Appendix at 875; 1 CR 487.
[16] *Id.* and Plaintiff's Response to Dillard's November 30, 2012 Motion for Summary Judgment, App. at 1466; 1 CR 487, 1536.

artists who work in commercial print, broadcast television, and other forms of media and advertising.[17] In 1997, Clark began using TCA as his talent agent.[18] Approximately one year later, in September 1998, Dillard's, one of TCA's clients, wanted Clark to model men's underwear under the product name Roundtree and Yorke.[19] Clark attended but did not execute any written release for usage rights. During this photo shoot, Clark modeled various styles of men's underwear and undershirts[20] and was paid his day rate for this photo shoot. He did not receive any additional usage fee for the resulting photographic images.[21] A couple of years after the photo shoot, Clark moved to Paris, France and worked in, among other places, South Africa, Italy, Japan, Spain and Germany.[22] Following his move, Clark resided outside of the U. S. consistently until 2009 and did not visit any of Dillard's stores during his infrequent trips to the U. S. for photo shoots or to visit family.[23] Dillard's does not have any stores located outside the United States.[24]

---

[17] Deposition of Nancy Campbell, Appendix at 568; 1 CR 697 at 20.
[18] Affidavit of Stephen Clark, Appendix at 143; CR Supp Vol. 3 at 43-46.
[19] Id.
[20] Id.
[21] Id.
[22] Id.
[23] *Id. See also*, Deposition of Stephen Clark, Appendix at 383; CR Supp Vol 2 at 67.
[24] Affidavit of Mike McNiff, Appendix at 970; 1 CR 578- 580.

In approximately November 2009, Appellant was informed by a friend via Facebook that Dillard's was using Clark's image of the underwear photos taken in 1998. The images appeared on packaging for Dillard's in-house brand of men's underwear without Clark's knowledge or compensating him.[25] Because TCA was Clark's agent at the time the photographs were taken, Clark asked TCA to contact Dillard's to resolve the matter.[26] Industry protocol required Dillard's to pay Clark for usage rights and to pay TCA for its commission.[27] TCA refused to defend Clark's rights adverse to Dillard's, breaching fiduciary and/or contractual duties and industry protocols.[28]

Clark did not agree that Dillard's or any party could use his image for product packaging.[29] Nor did he execute any usage agreement, release or other document with any of the parties involved in the photoshoot, including TCA, Dillard's or McKool.[30] Other than his day rate for appearing for the modelling session, Clark was never paid a usage fee for

---

[25] Trial Transcript, Vol. 8 at 47:16 - 24, App. at 90; RR 8 at 47.
[26] Deposition of Nancy Campbell, 72:20-73:5, App. at 438; 1 CR 710.
[27] Deposition of Nancy Campbell, 76:11-25, App. at 439; 1 CR 711.
[28] Appendix at 143-144; CR Supp Vol. 3 at 45-46.
[29] Appendix at 413 and App. at 1640 ¶ 8; 1 CR 550; 1169.
[30] *Id.*

his images by any party.[31] The images used include Clark's face and torso on product packaging for men's underwear garments.[32]

## III. ARGUMENT

### A. THE COURT ERRED IN DENYING CLARK'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON MISAPPROPRIATION OF LIKENESS.

#### 1. Standard of Review

An appellate court reviews a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law.[33] Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.[34]

As explained more fully below, Clark filed his Motion for Partial Summary Judgment on May 25, 2012 on the issue of misappropriation of his likeness.[35] In response to Clark's Motion, Dillard's argued that Clark was not entitled to summary judgment because he could not establish that the misappropriation was not incidental, there was no value

---

[31] *Id.* ¶ 9; 1 CR 1169.

[32] Appendix at 997-1007;1 CR 605-620.

[33] Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts, 300 S.W.3d 348, 365; See also Chappell v. Allen, 414 S.W.3d 316,  Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211.

[34] Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).

[35] Plaintiff's Motion for Partial Summary Judgment, App. at 102; CR Supp Vol. 3 at 4.

associated with his image because he is not a celebrity, and because the public at large would not recognize him absent celebrity status or proof of actual recognition.[36] Dillard's arguments were misleading however, because there was and is value associated with Clark's image, and neither celebrity-status nor wide-spread recognition are required under the law. Further, Clark had alleged actual recognition.[37]

Dillard's further alleged Clark consented to the use on product packaging[38] but could not produce a release evidencing this position.[39] There are no documents supporting that Clark released his right of publicity and no testimony from anyone with personal knowledge that he ever signed a release. To further support this flawed argument, Dillard's misused Clark's deposition testimony, failing to use the corrected version of his transcript.[40] The unsigned and uncorrected transcript had several errors which were corrected by the witness. Dillard's quoted the uncorrected version of the transcript, attempting to use errors in the transcript to create a fact issue on when Clark first learned of the use of

---

[36] Appendix at 169; CR Supp Vol. 2 at 6
[37] Trial Transcript, Vol. 8 at 47:16 - 24, App. at 90; RR 8 at 47.
[38] Appendix at 177-178; CR Supp Vol. 2 at 14-15.
[39] Trial Transcript, Vol 8, 188:1-11, App. at 93; RR 8 at 188.
[40] Appendix at 174; CR Supp Vol. 2 at 11.

his image.[41]  Clark did not see the image in 1999 as Dillard's claimed; had Dillard's quoted the deposition transcript as corrected this issue would not have been a matter requiring consideration by the lower court or this court of appeals.[42]

Nevertheless, based on the above, the district court erred as it relied on Dillard's invalid arguments and, in doing so, denied Clark's motion.[43]  Because Clark established that there is no genuine issue as to any material fact concerning Appellees misappropriation of his likeness, he was entitled to judgment as a matter of law.

## 2. Appellant Established that He was Entitled To Summary Judgment as a matter of law

Under TEX. R. CIV. P. 166a(c), a plaintiff is entitled to summary judgment if:

> (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any

---

[41] *Id.*

[42] Clark Deposition at 136: 15-16 App. at 393 and errata sheet dated August 13, 2012, App. at 2258 and 1357; 1 CR 532.

[43] Order dated September 7, 2012, App. at 55-56; 1 CR 401.

material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion . . . ."[44]

In order to establish misappropriation of likeness, Clark must show: "(1) that Dillard's appropriated Clark's . . . likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) Clark can be identified from the publication; and (3) there was some advantage or benefit to Dillard's."[45]

### a. Defendants appropriated Clark's likeness for the value associated with it

"The threshold issue to determine in analyzing this element is whether Defendant[s] actually appropriated [Clark's] name or likeness."[46] The photographs of Clark on the Infringing Packaging are clear and Defendants do not dispute that Clark's images are on the Infringing Packaging. Based thereon, "the Court [must] conclude[] that there is no genuine fact issue in dispute as to whether Defendant[s] appropriated Plaintiff's . . . likeness."[47]

---

[44] TEX. R. CIV. P. 166a; *See also State Farm Fire and Cas. Co. v. Vaughan,* 968 S.W.2d 931, 932 (Tex. 1998); *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).
[45] *See generally, Henley v. Dillard Department Stores*, 46 F. Supp. 2d 587, 590 (citation omitted) (N.D. Tex. 1999).
[46] *Id.* at 591.
[47] *Id.* at 592.

Dillard's argued that Clark consented to the use of his image because he agreed to pose for the photos and because the photographer released her photographic copyrights in the images.[48] But Appellants have not and cannot produce any documentation to show that Clark assigned the rights to his image to Dillard's or the photographer.[49] Because the photographer did not hold Clark's right to publicity, she could not transfer it to Dillard's. As for the right of publicity, Clark never consented to the use of his image on product packaging, let alone the ongoing use over several years.[50]

"The second issue the Court must resolve is whether Defendant[s] appropriated Plaintiff's name or likeness *for the value associated with it*, and not in an incidental manner."[51] It is disingenuous for Dillard's to argue that the use of Clark's image was incidental and not for the value associated with it.[52] The record reflects that Mr. Clark was the face of

---

[48] Dillard's Opposition to Plaintiff's Motion for Partial Summary Judgment dated July 30, 2012, App. at 170; CR Supp Vol. 1 at 7

[49] Trial transcript of Dean Worley, App. at 93; Affidavit of Mollie McKool, App. at 1190 ¶7 and 1192 ¶ 18-19; 1 CR 802; 804.

[50] Plaintiff's Response to Dillard's November 30, 2012 Motion for Summary Judgment, App. at 1640 ¶8;1 CR 1169.

[51] *Henley*, 46 F. Supp. 2d at 592.

[52] Id.

Chanel[53] and a favorite of Giorgio Armani.[54] He appeared as James Bond in *Bazaar's Magazine*,[55] and was the face for Hanes underwear, appearing on Hanes' product packaging.[56]  Having a couture model appear on product packaging, or in a national advertising campaign is more valuable and more expensive than using a model with lesser credentials.  This is the case with Dillard's.  Using Clark's image would require appropriate compensation, such as the compensation paid by Hanes for Clark's product packaging for men's underwear garments.  By its very nature, the "purpose of advertising is to persuade a consumer to purchase a particular product."[57]  Thus, there is value inherently associated with the images used on advertising.  In fact, Dillard's has previously admitted through its Vice President of Sales Promotion that with respect to advertising or packaging, the "chief importance" is "the visual presentation of information."[58]  This is the very reason Dillard's chose these photos for its packaging and continued to use them in excess

---

[53] Trial Transcript, Vol. 8 at 30:5-7 and 143:16-144:8, App. at 89 and 91-92; RR 8 at 30, 143-144.
[54] *Id.* at 27:1-9, App. at 88; RR 8 at 27.
[55] *Id.*
[56] Deposition of Stephen W. Clark, July 10, 2012, at 77:13-15, App. at 379;  1 CR 518.
[57] *Christoff v. Nestle USA, Inc.*, 62 Cal. Rptr. 3d 122, 132 (Cal. Ct. App. 2007).
[58] *Henley*, 46 F. Supp. 2d at 593.

of six years.  Thus, Clark's image on the Infringing Packaging was clearly and indisputably appropriated for the value associated with it.

>    **b.** It is undeniable that Clark can be and is identified through the publication

The Infringing Packaging clearly displays Clark's face. Mr. Clark is recognizable to friends, family, other models, and agents. Contrary to the Appellant Dillard's misleading assertions, which were relied upon by the trial court, there is no requirement that the misappropriated image be widely recognizable, a household name or of celebrity status.[59] "To establish liability, plaintiff need prove no more than that he or she is reasonably identifiable in defendant's use to more than a de minimus number of persons."[60]  Because Clark's face is plainly visible, any number of people who know him personally or are familiar with his other modeling work can easily recognize him.  As mentioned above, Clark discovered Dillard's use precisely because a friend recognized him on Roundtree & Yorke packaging and brought it to his attention.[61]  But this is not to say that Clark was only recognizable to his close friends and

---

[59] Dillard's Opposition to Plaintiff's Motion for Partial Summary Judgment dated July 30, 2012, App. at 167; CR Supp Vol 1 at 4-6.
[60] *Henley,* 46 F. Supp. 2d at 595 (quoting McCarthy, 1 *The Rights of Publicity & Privacy* § 3.2 (1998)).
[61] Trial Transcript, Vol. 8 at 47:16 - 24, App. at 90; RR 8 at 47.

family.  Clark testified at trial that he had been recognized for his work with Chanel,[62] and the advertisement for Chanel was framed and hung in office of his agent, Nancy Campbell of the Campbell Agency.[63]  Clark has shown that he is reasonably identifiable in the image used by Dillard's.  Consequently, there is no genuine issue as to whether Clark's likeness can be identified from the publication or Infringing Packaging.

<strong>c.</strong> Appellants obtained a benefit from appropriating Clark's likeness

Dillard's cannot legitimately claim that it did not obtain an advantage or benefit from using Clark's likeness, nor do they dispute it in their Opposition to Plaintiff's Motion for Partial Summary Judgment.[64] Dillard's does not dispute the benefit derived from using Clark's image, so there is no dispute as to material facts concerning the benefit derived by Appellants.

For more than a decade, Dillard's attracted customers and sold merchandise based on Clark's image.  As Judge Solis observed in a similar case against Dillard's for the misappropriation of another individual's name or likeness:  "[O]ne of the primary purposes of

---

[62] Trial Transcript, Vol. 8 at 143:16-144:8, App. at 91-92; RR 8 at 143-144.

[63] *Id.* at Vol. 7, 177:24 – 178:5, App. at 85-86; RR 7 at 177-178.

[64] Appendix at 167; CR Supp Vol 1 at 4.

advertising is to motivate a decision to purchase a particular product or service. The first step toward selling a product or service is to attract the consumers' attention.'"[65] But the benefit received from Dillard's does not even have to be monetary or financial: Clark simply needed to prove that Appellants "derived some commercial benefit from the use of [Appellee's] name or likeness as opposed to deriving no commercial benefit."[66] Although Dillard's most likely made millions of dollars in profits from the sales of the Roundtree & Yorke underwear in the Infringing Packaging, it need not have made a dime in order for Appellants to have derived a benefit from the misappropriation of Clark's image. "If a defendant appropriates a plaintiff's name or likeness for his own commercial advantage, he necessarily derives a benefit from its use."[67] The court in the other Dillard's misappropriation case went on to explain that "[t]he plaintiff in a right to publicity action is not required to show that the defendant made money off the commercial use of the name or likeness."[68] Rule 166a clearly states:

---

[65] *Henley*, 46 F. Supp. 2d at 594 (quoting *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 693 (9th Cir.1998)).
[66] *Id.* at 596 (citing Restatement (Second) of Torts § 652C cmt. d).
[67] *Id.*
[68] *Id.*

The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, . . . show that, <u>except as to the amount of damages</u>, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion . . . ." [69]

It is undisputed that Dillard's obtained a long-term benefit from its misappropriation of Clark's image. As stated above, there were no material issues of fact regarding Dillard's misappropriation of Clark's likeness. The trial court erred when it relied on Dillard's misleading and invalid arguments and denied Appellant's Motion for Partial Summary Judgment as to Defendant's Misappropriation of Likeness. Therefore, this Court should reverse the lower court's ruling and grant judgment in favor of Appellant as a matter of law.

**B. THE COURT ERRED IN GRANTING IN PART DILLARD'S MOTION FOR SUMMARY JUDGMENT, DISPOSING OF SEVERAL CLAIMS AND REMEDIES FOR DAMAGES.**

In its December 27, 2012 Order, the trial court created a triad of reversible errors by granting in part Dillard's Motion for Summary Judgment on the issues of injunctive relief, unfair business practices, and

---

[69] TEX. R. CIV. P. 166a(c) (emphasis added).

declaratory relief.[70]   Like this Court's review of the trial court's denial of Plaintiff's Motion for Partial Summary Judgment, the rulings of the trial court on Dillard's Motions for Partial Summary Judgment are evaluated under a *de novo* standard of review.[71]

First, the trial court erred by ruling in favor of Dillard's on its Traditional and No Evidence Motions for Summary Judgment with respect to Clark's request for injunctive relief. Dillard's argued that it does not intend to use Clark's image on product packaging in the future. Yet this argument fails to account for the fact that a request for a permanent injunction should be decided only after a plaintiff has proven a defendant's liability.  Dillard's statement is neither evidence nor an enforceable promise that Dillard's will not, in fact, repeat their unlawful conduct. But by choosing to adopt Dillard's unsupported statement of intent, the trial court robbed Clark of his right to seek injunctive relief after a trier of fact decides the liability issues.

Second, the trial court erred by ruling in favor of Dillard's on Clark's claims of unfair business practices. In Plaintiff's Second Amended

---

[70] Order on Dillard's Traditional and No Evidence Motions for Summary Judgment filed November 27, 2012 and November 30, 2012 (dated December 27, 2012), App. at 61-62; 1 CR 1121.
[71] Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003); Southwestern Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).

Petition, Clark pleaded in the alternative to his claim of misappropriation of likeness that Defendants' conduct constituted an unfair business practice. The theory is that unless there was an agreement between Clark and the Defendants allowing for the use of Clark's image on packaging – which there was not – then Defendants acquired the right to use Clark's images through some means other than Clark's express consent. These alternative means constitute an unfair business practice.

There is no evidence to support the existence of a contract – written, oral, or otherwise – between Clark and Defendants. What the evidence does show, however, is that Dillard's was able to use the Infringing Packaging for 10 years without having to pay for the use of Clark's image neither initially, nor after a term of years as a renewal, nor as any kind of increase over time as is typical in the industry.[72] Clark suffered damages not only from these lost wages, but also by losing the opportunity for publicity and exposure that otherwise could have resulted from an advertising campaign lasting over 10 years.

---

[72] *See* Affidavit of Stephen W. Clark dated Sept. 14, 2012, Ex. 9 to Plaintiff's Response to Dillard's November 30, 2012 Motion for Summary Judgment, App. at 1886 ¶14. 1 CR 486-490; 489.

Dillard's urged the trial court to hold that it had the rights to use Clark's image in any manner by virtue of timely paying its invoice to McKool. But McKool Photography could not transfer rights that it never possessed, and Clark never gave any publicity rights to McKool to be transferred.[73] Therefore, even if this Court agrees with Dillard's argument, it must also acknowledge that Clark's rights were transferred without his knowledge or consent. This unauthorized transfer of Clark's rights deprived him of control of his image for business purposes, prevented his benefitting from the use of that image and also from earning fees to which he was otherwise rightfully entitled.

Finally, the trial court erred by granting Dillard's summary judgment on Clark's request for declaratory relief. Clark is entitled to declaratory relief under the Texas Uniform Declaratory Judgment Act ("UDJA"). A person interested under a written contract, or whose rights, status, or other legal relations are affected by a contract may have any question of construction or validity arising under said contract determined and obtain a declaration of rights, status, or other legal

---

[73] Dillard's Response to Plaintiff's Motion for Partial Summary Judgment, dated July 30, 2012, exhibit 5, App. at 205-206 ¶10; 1 CR 803.

relations thereunder.[74] When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties.[75] Dillard's asserts that an invoice between Dillard's and McKool reflect an agreement between Clark and Dillard's granting Dillard's unlimited use of Clark's image. But Clark never entered into an agreement with any of the parties transferring his right of publicity. Clark never had an agreement with Dillard's, and McKool acknowledges that there was never any agreement between it and Clark.[76] Clark is an interested party and his legal rights are affected by how these instruments are interpreted. Therefore, Clark is entitled to have the usage rights determined by the Court. The UDJA permits Clark's request for a declaratory judgment.

A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. A justiciable controversy exists when there is a real and substantial controversy involving a genuine conflict of tangible interests and not merely a

---

[74] UDJA §37.004(a).
[75] *Id.* at §37.006(a).
[76] Affidavit of Mollie McKool, App. at 1190 ¶7 and 1192 ¶18; 1 CR 802; 804.

theoretical dispute.[77] Here there is a justiciable controversy because there is a dispute over whether a contract ever existed and, if a contract existed, what rights were transferred thereunder. Clark never granted his right of publicity or the unlimited right to use his image to any of the Defendants.[78] McKool did not have any rights in Clark's image.[79] Instead, McKool only possessed the copyright to the photographs themselves (*i.e.* a right to the elements attributed to the photographer's artistic ability – lighting, angle, shadow, background, etc.). While it is true that the invoice between McKool and Dillard's transferred McKool's copyrights in the images, it hardly follows that the invoice transferred any of Clark's rights as the model.[80] As previously discussed with regard to Clark's claim of unfair business practices, there is no evidence to support the existence of a contract – written, oral, or otherwise – between McKool and Clark. There is no language on either the invoice between Dillard's and McKool or any voucher received by Clark acknowledging that he showed up for the photo shoot that transfers Clark's right of

---

[77] Bonham State Bank v. Raymond G. Beadle, 907 S.W.2d 465 (Tex. 1995).
[78] Affidavit of Stephen W. Clark, Ex. 20, ¶5 to Plaintiff's Response to Dillard's November 30, 2012 Motion for Summary Judgment, App. at 1888; 1 CR 1169.
[79] Affidavit of Mollie McKool, dated Sept. 13, 2012, Ex. 5, ¶7 to Plaintiff's Response to Dillard's November 30, 2012 Motion for Summary Judgment, App. at 1190; 1 CR 802.
[80] Id.

publicity. Consequently, these instruments do not transfer usage rights or the right to reproduce Clark's image, and the declaratory relief requested by Dillard's and granted by the trial court is erroneous.

### C. The Court Erred in granting TCA's motion for summary judgment, dismissing it from the case.

On October 26, 2012, TCA filed a motion for summary judgment on all claims pending against it.[81] In its Traditional and No-Evidence Motion for Summary Judgment, The Campbell Agency sought to dismiss all claims against it by boldly asserting that it had neither a fiduciary duty nor any sort of contractual obligation to Clark. Yet The Campbell Agency holds itself out as an "Agency" and is in the business of representing models and actors through its network of "agents."[82] TCA argued in the alternative that if it did owe any fiduciary or contractual duties to Clark, then Clark's claims were barred by either laches or the

---

[81] Appendix at 270. Because the Court had previously dismissed certain claims in response to Dillard's motion, TCA and Clark agreed that the Court's rulings would apply to TCA, without waiving any arguments for appellate purposes; CR Supp Vol.2 at 4.
[82] Campbell Dep. 20:21-24, App. at 568; 1 CR 697.

applicable statute of limitations.[83]  The trial court granted TCA's Motion for Summary Judgment, and dismissed Clark's claims against TCA.[84]

## 1. The District Court Erred By dismissing TCA on arguments that TCA did not advance in its Disclosures.

In response to Plaintiff's Request for Disclosures, TCA was required to "state the legal theories and, in general, the factual bases of [its] claims or defenses." Tex. R. Civ. P. 194.2(c). It was also required to identify "persons having knowledge of relevant facts" as well as experts. *Id.* at 194.2(e).  None of the legal arguments or facts relied upon by TCA in its Motion were ***ever*** disclosed in ***any*** of its Disclosures.[85]  Likewise, to support its Motion, TCA relies on the testimony of fact and expert witnesses whose identities were never mentioned in Disclosures.[86] Because TCA wholly and completely failed to disclose the facts, witnesses and legal theories forming the basis for the motion for summary

---

[83] Appendix at 270; CR Supp Vol. 2 at 20-22.

[84] *See* Orders Granting Traditional and No Evidence Motions for Summary Judgment, App. at 58-59; 1 CR 890-891.

[85] *See* Appendix at 511-528 (#10, The Campbell Agency's Response to Clark's Request for Disclosure which fails to disclose any of the legal theories of factual bases advanced in TCA's Motion), #11, The Campbell Agency's First Amended Response to Clark's Request for Disclosure (also fails to disclose any of the legal theories or factual bases advanced in TCA's Motion) and #12, The Campbell Agency's Second Amended Response to Clark's Request for Disclosure (failing again to disclose any of the legal theories or factual bases advanced in TCA's Motion).
CR Supp Vol 2 at 84,88,90.

[86] *Id.*

judgment, the court could not rely upon those witnesses, facts or legal theories.[87] The trial court erred as a matter of law by granting the motion, and this court should reverse that decision.

## 2. Issues Concerning Breach of Fiduciary Duty

TCA sought dismissal of Appellant's breach of fiduciary duty claim, arguing that the existence of any fiduciary duty is purely a question of law, not one of fact. In its argument, TCA failed to cite Texas Supreme Court authority holding that the existence of fiduciary duties involving fair dealing, trust and confidence are fact issues.[88] TCA is simply wrong on the law.

Disputed facts exist as to what TCA's responsibilities were at the time that it acted as Appellant's agent, and what responsibilities carried forward after the agency relationship was terminated. "A talent agent, or booking agent, is a person who finds jobs for actors, authors, film directors, musicians, ***models***, producers, professional athletes, writers

---

[87] *See e.g., Hernandez v. Mid-Loop, Inc.*, 170 S.W.3d 138, 144 (Tex. App.--San Antonio 2005, no pet.); *Chasewood Oaks Condominiums Homeowners Ass'n v. Amatek Holdings, Inc.*, 977 S.W.2d 840, 845 (Tex. App.--Fort Worth 1998, pet. denied).
[88] Crim Truck & Tractor Co. v. Navistar International Transportation Corp., 823 S.W.2d 591, 594 (Tex. 1992).

and other people in various entertainment businesses. An agent also defends, supports and promotes the interest of his/her clients."[89]

Issues of fact exist as to the scope of TCA's responsibilities to Appellant. Was TCA required to "defend, support and promote" Appellant at any time? What were the on-going responsibilities of TCA for the TCA-generated bookings after Appellant changed agents? Was there an agency agreement and, if so, what were the terms of the agreement? What were TCA's continuing obligations as to Appellant with respect to any dispute with Dillard's? Was TCA required to monitor usage? Was it reasonable for Appellant to expect that TCA was monitoring usage during the time of the agency relationship? Is it reasonable that prolonged usage by Defendant Dillard's could not have escaped the attention of TCA? These and other questions regarding the relationship between Appellant and TCA are issues of fact for a jury. The answers to these questions would determine whether fiduciary and/or contractual obligations existed between Clark and TCA.

TCA's owner and executive admitted that industry protocols require the booking talent agent to contact the talent with issues relating to any

[89] *See, e.g., Business Essentials and Social Responsibilities*, Tenae Wheeler, 2012. Wheeler's definition has been quoted word-for-word in 1,320 articles, webpages and other publications based on a Google search of the referenced quotation.

job booked by the talent agency. Campbell admitted that "[i]t is proper protocol in our business if an agency books a job and, if there's an issue, then that agency should be the one to contact the client."[90] The "client" in this context, Campbell is the agent, Clark is the talent and Dillard's is the client.

Through this testimony, Campbell confirms by admission that industry protocols require an agent to contact the retail client when an issue arises and that the obligation to do so is ongoing. Those "industry protocol" obligations support the position that TCA had fiduciary duties of fair dealing, confidence and trust which are fact issues to be determined by a jury pursuant to the Texas Supreme Court's decision in *Crim Truck*.[91]

During her deposition, Campbell admitted that she did nothing to contact the Client, Dillard's, when she learned of the problem.[92] She also admitted that she took no action to confirm that Clark's rights were preserved. "I wasn't looking for Stephen's image on anything."[93]

---

[90] Campbell Dep. 76:14-17, App. at 624; 1 CR 711.
[91] 823 S.W.2d at 594 (Tex. 1992).
[92] Campbell Dep. 73:17-18, App. at 621; 1 CR 711.
[93] Campbell Dep. 250:11-12, App. at 798; 1 CR 755.

TCA admitted that it took no action during the 1998-2000 time frame to monitor usage, which Appellant contends was in violation of its fiduciary duties and in breach of contract. These admissions prove that TCA did not satisfy its obligations and, at the very least, resulted in fact issues, requiring denial of the motion for summary judgment. In her deposition testimony, Campbell conceded that, in response to Appellant's request that TCA defend his publicity rights consistent with such industry protocol, "I told him no."[94]

### 3. Issues Pertaining to Breach of Contract Claim

As noted above, TCA relied on legal arguments, fact witnesses and facts that were not disclosed in its responses to requests for disclosures. To avoid duplication, Appellant will not repeat that argument here.

There are facts in dispute that preclude summary judgment on the contract claims. In her deposition, Campbell admitted that TCA was responsible for approaching Dillard's when an issue arose regarding the use of Appellant's image because TCA secured the representation. Campbell admitted that "[i]t is proper protocol in our business if an agency books a job and, if there's an issue, then that agency should be the

---

[94] Campbell Dep.73:17-18, App. at 621; 1 CR 711.

**Appellant's Amended Opening Brief and Appendix**                                                27

one to contact the client."[95]  Through this testimony, Campbell confirms that the contractual obligations of an agent to defend a model's right of publicity are continuous in nature for the jobs booked by that agency.

Campbell further admitted that Appellant contacted TCA, identified the issue with Dillard's and requested that TCA resolve the issue.  Specifically, Campbell admitted that "he asked if I would call Dillard's"[96] on his behalf, as required under the "industry protocol." In her deposition testimony, Campbell conceded that, in response to Appellant's request that TCA defend his publicity rights consistent with such industry protocol, "I told him no."[97]  By refusing to defend Appellant's right of publicity for the job at issue, Appellant contends that TCA breached contractual obligations and/or fiduciary duties.  Thus, TCA's Motion should be denied based on the testimony of its President, Nancy Campbell.

### 4. Issues Pertaining to the Statute of Limitations and Laches Affirmative Defenses

TCA also sought summary judgment on its affirmative defenses of statute of limitations and laches.  To prevail on either defense, TCA is

---

[95] Campbell Dep. 76:14-17, App. at 624; 1 CR 711.
[96] Campbell Dep. 73:17-18, App. at 621; 1 CR 711.
[97] Id.

first required to state the accrual date for each cause of action, which it does not do. Without an accrual date, TCA cannot argue that any limitations or laches period expired. TCA has the burden to prove (1) when the action accrued; (2) when Clark knew that he had an action to assert; and (3) that the discovery rule does not apply.

A cause of action accrues when "a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."[98] The breach of fiduciary duty and breach of contract causes of action are inextricably tied to Dillard's use of Appellant's images for product packaging. Had Dillard's never used the images for product packaging, there would be no breach of fiduciary duty by TCA. Likewise, had Dillard's never used the product packaging, there would be no breach of contract.

This leads to the question of when Dillard's first started using the images for product packaging. Dillard's has been unable to establish a reliable date of first use. The ***only*** evidence that Dillard's has produced regarding its first use is the affidavit testimony of Mike McNiff. However, McNiff's lack of personal knowledge became obvious during his

---

[98] *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997); *Burke v. Insurance Auto AuctionsCorp.,* 169 S.W.3d 771, 776 (Tex. App. -- Dallas 2005, pet. denied).

deposition when he testified that the images in question were used for product packaging "around 1991," seven years before the photography shoot occurred.[99] After getting a hint from his lawyer that his deposition answer was wrong (over the objection of counsel for Appellant), Mr. McNiff changed his testimony to say that he "believed it was around 2001."[100] Immediately following this ambiguous statement, the witness finally admitted, "I don't know exactly when the merchandise hit the floor, no, sir."[101]

The witness also admitted that paragraph 2 of his Affidavit is false. In this part of his Affidavit, McNiff claimed to have supervisory responsibility over advertising agencies, modeling agencies and photo studios. When asked in his deposition if he in fact had that supervisory authority, he admitted that he did not. Ex. 1at 38-39. When asked who did have supervisory responsibility, McNiff testified it was Christine Rowell, another Dillard's employee. Ex. 1 at 40-41.

Damages are an element that must be proved as part of a cause of

---

[99] McNiff Dep. *See* Plaintiff's Response to Dillard's Motion for Summary Judgment dated November 27, 2014 Ex. 1 pg 28, App. at 1249;1 CR 593.
[100] *Id.* at 1251; 1 CR 594.
[101] *Id.* at 1252;1 CR 594.

action for breach of fiduciary duty.[102]  Similarly, damages are required to prove breach of contract.[103]  The key issue, therefore, is the date when Appellant first could have suffered damages and asserted a valid claim for breach of fiduciary duty.  The earliest time that TCA can assert that this cause of action accrued is the date of first use of the images on product packaging by Dillard's because, until that time, Appellant had suffered no damages.  As indicated above, neither TCA nor Dillard's can say when the images were first used.  Therefore, TCA cannot carry its burden of proof in establishing the date when the cause of action accrued.

The identical argument applies for the breach of contract cause of action.  The cause of action did not accrue until Appellant suffered damages, an essential element of the claim, which occurred only upon first use of the images.  Again, TCA cannot prove the date of first use, and therefore, cannot prove when the cause of action accrued.

Finally, TCA admitted in its Answer to Plaintiff's First Amended Petition that it "does not have personal knowledge whether the photos shown in Plaintiff's Original Petition were even taken during the 9.16.98 shoot."  Ex.13 at p. 2.  Given this admission, the question arises as to

---

[102] *See Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied).
[103] *See Stewart v. Sanmina Texas, L.P.*, 156 S.W.3d 198, 214 (Tex. App.-Dallas 2005, no pet.)

whether any aspect of TCA's Motion can be granted until a fact-finder determines whether the photos used by Dillard's were in fact from the 9.16.98 photography session.

### 5. TCA Has Failed to Carry its Burden as to The Discovery Rule.

In its motion, TCA took the position that the discovery rule does not apply to Appellant's causes of action. The burden is on TCA to show that the discovery rule is unavailable to Appellant.[104] To do so the Defendant must ***(1) conclusively prove the date the cause of action accrued and (2) negate the applicability of the discovery rule if it applies and (3) has been pleaded or otherwise raised.***[105] TCA did not plead the defenses.[106] Even if it had pleaded those defenses, TCA cannot and does not provide evidence for when each cause of action accrued. As noted above, none of the Defendants could testify as to when Dillard's first started using the photos on product packaging.

To negate the applicability of the discovery rule, a defendant must prove, as a matter of law, that there is no genuine issue of material fact about when the plaintiff discovered or, in the exercise of reasonable

---

[104] Peggy Woods, C.R.N.A., V. William M. Mercer, Inc., Et Al. 769 S.W.2d 515, 518.
[105] *Id.*
[106] Appendix at 530; 1 CR 457-464.

diligence, should have discovered the nature of his injury.[107] Again, none of the Appellees can say when Dillard's first started using the product packaging.

As noted above, TCA has failed to plea or prove the date the cause of action accrued.[108] It cannot carry its burden of proof that the discovery rule does not apply. For this reason the Motion should have been denied.

### D. IT WAS ABUSE OF DISCRETION TO CONSTRUCTIVELY STRIKE APPELLANT'S EXPERT THE DAY BEFORE TRIAL.

On July 16, 2013 the trial court denied Defendant's Motion to Strike Expert filed on July 12, 2013, but qualified its ruling by stating "if Plaintiff chooses to call Peter Sealey as an expert, he shall make Mr. Sealey's expert report available by 9:30 a.m. on July 16, 2013."[109] The trial court erred by constructively striking Plaintiff's expert the day

---

[107] Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 223; KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999);

[108] The discovery rule applies when the publication is either fraudulently concealed or not easily discoverable. *S.V. v R.V.,* 933 S.W. 2d 1, 6; *Pedro Nosnik et al. v. Ginsberg and Brusilow, et. al.,* 2000 Tex. App. LEXIS 3730, 3737. An injury need not be absolutely impossible to discover and discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred. *S.V. v. R.V.* at 7. In the present case the injury occurred in a chain of department stores located exclusively in the United States. There were no visible operations for Appellant to discover while residing in France. Under the circumstances, the unauthorized use of Appellant's image was not easily discoverable. When Plaintiff did learn of the misappropriation in 2009 he began to work with his then-current modeling agency to resolve the issue.

[109] Order Regarding Pretrial Hearing, July 16, 2013 para 4; 2 CR 418.

before trial because Plaintiff's expert was qualified and no expert report could be drafted without Dillard's first supplementing its disclosures.

## 1. Dillard's First Motion to Strike Plaintiff's Expert

On July 15, 2012, Plaintiff timely designated two damages experts Lloyd D. Robinson and Dr. Peter Sealey. After timely designating both experts Plaintiff chose not to call Mr. Lloyd Robinson for strategic reasons. On the eve of trial, July 15, 2013, the Court, in response to Dillard's Motion to Strike Plaintiff's Expert Witness, ruled that Dr. Sealey may only testify if he could draft and provide Dillard's with an expert report the next morning; a feet impossible for Dr. Sealey to meet. Therefore, the Court erred because its actions constituted a constructively strike of Plaintiff's intended damages expert, Dr. Peter Sealey.

Defendant filed the first of two Motions to Strike Plaintiff's Experts on August 7, 2012. Defendant complains that Plaintiff failed to timely designate its expert and to provide the general substance of Dr. Sealey's opinions, the basis of his opinions, and the foundation of his expertise. Plaintiff, in his response, contended that his designation was timely and adequate from the beginning. In any event, Plaintiff properly

supplemented its designation/disclosures as discovery continued in this case and months before this trial date. Defendant did not object to the adequacy of the supplemented disclosures.

### a. Plaintiff Timely Identified Dr. Sealey

First, Defendant claimed that Plaintiff did not timely designate Dr. Sealey as a witness and he is therefore barred from testifying under "Rule 215(5) Tex. R. Civ. P.,"[110] Rule 215.5 states:

> **215.5 Failure of Party or Witness to Attend to or Serve Subpoena; Expenses.**
> (a) **Failure of party giving notice to attend.** If the party giving the notice of the taking of an oral deposition fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the notice, the court may order the party giving the notice to pay such other party the reasonable expenses incurred by him and his attorney in attending, including reasonable attorney fees.
> (b) **Failure of witness to attend.** If a party gives notice of the taking of an oral deposition of a witness and the witness does not attend because of the fault of the party giving the notice, if another party attends in person or by attorney because he expects the deposition of that witness to be taken, the court may order the party giving the notice to pay such other party the reasonable expenses incurred by him and his attorney in attending, including reasonable attorney fees.

---

[110] Defendant's Motion to Strike, App. at 2064; 2 CR 84.

Defendant did not depose Dr. Sealey nor has it served him a subpoena, therefore this Rule is inapplicable and results in a groundless allegation. If the Defendant meant to refer to TRCP Rule 193.6, which superseded Rule 215.5 in 2003, Clark also prevails. Rule 193.6(a) states:

> **193.6 Failing to Timely Respond - Effect on Trial**
> **(a) Exclusion of evidence and exceptions.** A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or **offer the testimony of a witness (other than a named party) who was not timely identified**, unless the court finds that:
>> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
>> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

If this in fact is the rule to which Defendant intended to cite, Defendant overlooked the fact that Plaintiff amended his disclosures on July 15, 2012, prior to the close of discovery and prior to the date when Attorney Camina made an appearance in this case. The disclosures were sent by certified mail to Patricia Nolan, the attorney representing

Dillard's at the time. The certified mail receipt is attached hereto in the Appendix,[111] proving that Dillard's counsel received the documents.

The disclosures sent on July 15, 2012, and received by Attorney Nolan on July 22, 2012, disclose Peter Sealey as an expert and disclose Mr. Sealey's damages contentions. In addition on, March 20, 2013 Plaintiff supplemented his disclosures further setting forth Mr. Sealy's damages theory. Additional information was also provided regarding the punitive damages theory in March, 2013. That additional information is based on Mr. Sealey's review of discovery that had been produced by Dillard's after September 10, 2012.

### b. No Expert Report Could Be Generated

In his response to disclosures, Clark offered to provide an expert report from Dr. Sealy upon the satisfaction of one condition: Dillard's fully answer discovery concerning sales of each of the products bearing Clark's face and torso.[112] Dillard's was previously ordered to produce financials on September 5, 2012.[113] Dillard's provided some, but not all, of the documents ordered, claiming it could not locate all of the documents.

---

[111] Appendix at 2154; 2 CR 604.
[112] Trial transcript Vol. 6, 54:7-55:10, App. at 67-68.
[113] Appendix at 2253; 1 CR 397-400.

Because Dillard's either could not, or would not, produce the needed discovery, the statement in the disclosures was nullified.

### c. The Standard in Texas for the Admission of Expert Opinion Evidence

Rule 702 of the Texas Rules of Evidence permits a witness qualified by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact issue.[114] A two-part test governs whether expert test only is admissible: 1) is the expert qualified, and 2) is the testimony relevant and based on a reliable foundation?[115]

### d. The Qualifications of Dr. Peter Sealy

As evidenced by his Curriculum Vitae,[116] and provided to Defendant in Plaintiff's Supplemental Disclosures served on Defendant on July 15, 2012, Dr. Peter Sealey, is qualified in knowledge, skill experience and training to provide his opinions regarding Plaintiff's damages.

Dr. Sealey is the former Senior Vice President of Global Marketing at The Coca-Cola Company where he launched Diet Coke and also served

---

[114] Tex. R. Civ. Evid 702; *Gammill v Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998).

[115] *E.I du Pont de Nemours v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995).

[116] Appendix at 2156; 2 CR 606-610.

as President of Marketing at Columbia Pictures. He is the former co-director of the Center of Marketing and Technology at the Haas School of Business, U.C. Berkeley, has been a professor at the Stanford Graduate School of Business and currently teaches entertainment marketing at the Drucker/Ito Center Graduate School of Management at Claremont University. He consults to numerous global corporations and Silicon Valley start-ups such as VeriSign, General Motors, Coke, Sony, Anheuser-Busch, Visa U.S.A., UPS, ImproveNet, Johnson & Johnson, Hewlett-Packard, Kodak, and Nokia. He currently serves, or has served, on the Boards of Directors of cFares, Inc.,4Info, IMMI, inc., Reply!, StrongMail, Round Table Pizza, L90, Inc., MediaPlex, Inc., T/R Systems, United Parcel Service Capital, Learning Framework and Kinzan.com. He serves, or has served, on the Boards of Advisors of Intent MediaWorks, Facebook, Cognitive Labs, Rearden Commerce, Veoh, HomeGain.com, Space.com, Learning Framework, Zinio & eVoice.com.

Dr. Sealey received a Bachelor of Science degree in Business from the University of Florida, a Master of Industrial Administration degree from Yale University, and Master of Arts in Management and Doctor of Philosophy degrees in Management and Information Technology from the

Peter F. Drucker Graduate Management Center at The Claremont Graduate School.

### 2. Dillard's Second Motion to Strike Plaintiff's Expert

Dillard's Second Motion to Strike Plaintiff's Expert was filed on Friday, July 12, 2013 at 3:32pm, knowing that trial was to begin the following Monday morning. In its second Motion to Strike Plaintiff's Expert, Dillard's, for the first time, argued that Dr. Sealey should have provided Defendant with an expert report despite the fact that, as repeatedly mentioned in Plaintiff's initial and amended disclosures, Dr. Sealey could not create an expert report without Dillard's first providing certain outstanding discovery materials.[117] Furthermore, Dillard's did not ask for Dr. Sealey's expert report. Under TRCP 194.2(f)(4)(A) a party can ask for a report from the other party's retained testifying expert in a request for disclosures. Dillard's never served on Plaintiff such a request, instead it waited until the eve of discovery to demand a report. The court's ruling for Dillard's was erroneous because Dr. Sealey could not have drafted a report without Dillard's first supplementing its discovery.

### E. THE COURT FAILED TO TAKE JUDICIAL NOTICE OF PAST PLEADINGS.

---

[117] Appendix at 2162; 2 CR 84.

A Texas Court "*shall* take judicial notice [of facts] if requested by a party and supplied with the necessary information."[118] Therfore, it is mandatory for a Court to take judicial notice of another court's records if a party provides proof of the records.[119] Failure to take Judicial Notice is reviewed for abuse of discretion, reviewing the entire record.[120]

While this case was in the trial court, Appellant provided the Court with copies of the following documents: (1) the Order granting The Campbell Agency's Motion for Summary Judgment;[121] (2) the case law decision detailing the summary judgment granted in the *Henley v. Dillard Department Stores* case[122] ("Henley Litigation"); and (3) the Court's finding of Mollie McKool Photography, Inc. as a responsible third party in this case.[123] Incredibly, the trial court did not take judicial notice of these documents. The law plainly states "the Court *shall*"; there is no room for discretion or argument, despite Defendant's claim that the

---

[118] TEX. R. EVID. 201(d) (emphasis added).
[119] *Freedom Communs., Inc. v. Coronado,* 372 S.W.3d 621, 623 (Tex. 2012); *MCI Sales & Serv. Inc. v. Hinton,* 329 S.W.3d 475, 497 n.21 (Tex. 2010).
[120] *In re A.R.,* 236 S.W.3d 460, 477 (Tex.App.-Dallas 2007); *Daugherty v. Southern Pac. Transp.* 772 S.W.2d 81, 83 (1989).
[121] Appendix at 2054; 2 CR 448.
[122] Appendix at 2039; 2 CR 434.
[123] Appendix at 2059; 2 CR 452.

request did not comport with Texas Rules of Evidence 201.[124] By ignoring the plain meaning of the word "shall," the trial court has once again erred.

### 1. The Campbell Agency's Motion for Summary Judgment

The Court erred in not ruling on Plaintiff's Request for Judicial Notice in the Bifurcated Proceedings Regarding Court's Entry of Summary Judgment for The Campbell Agency because, Appellant requested that the Court take Notice and the Court was "supplied with the necessary information." Tex. R. Evid. 201(d). On July 17, 2013, Appellant filed his Request for Judicial Notice in the Bifurcated Proceedings Regarding Court's Entry of Summary Judgment for The Campbell Agency.[125] Attached to this Request, as Exhibit 1, Appellant provided the Court with a copy of the order granting The Campbell Agency's Motion for Summary Judgment and therefore requested that the Court take judicial notice of said judgment. Despite Appellant's meeting the requirements for mandatory judicial notice, the Court did not take judicial notice.

---

[124] Trial Transcript Vol. 6, 20:12-13 dated July 15, 2013, App. at 65.
[125] Plaintiff's Request for Judicial Notice in Bifurcated Proceedings, App. at 2054; 2 CR 448.

The consequence of this failure was that the jury heard testimony casting blame on TCA for failure to monitor Clark's works and enforce proper usage; however, they were not made aware why TCA was not a participating in the case, or that they had been granted a summary judgment. This allowed the jury to consider mitigating circumstances when assessing fault/damages against Dillard's and also did not give them the full picture of TCA's involvement other than as an expert witness. Consequently, testimony given by an interested party was given inappropriate weight, Appellant was hampered in attempts to impeach TCA, and the award against Dillard's was unreasonably low.

## 2. The Motion for Summary Judgment Granted in the Henley Litigation

The Court erred in not ruling on Plaintiff's Request for Judicial Notice in the Bifurcated Proceedings Regarding Entry of Summary Judgment Against Dillard's in the Henley Litigation because Appellant requested that the Court take Notice and the Court was "supplied with the necessary information."[126] On July 17, 2013, Appellant filed the aforementioned request and attached thereto, as Exhibit 1, a copy of the *Henley* Court's memorandum and opinion.[127] Despite Appellant meeting all the requirements for judicial notice, the Court failed to take judicial notice of the *Henley* case.

Dillard's history of misappropriating likeness was pivotal to the question of enhanced damages. Had the Court judicially noticed the prior misappropriation case and it then been admitted for the jury's consideration, the jury would have had the opportunity to properly evaluate the question of Dillard's malice, which they were asked to determine. The jury was asked whether Dillard's acted with malice. Because they had no knowledge of Dillard's prior misappropriation, or

---

[126] Tex. R. Evid. 201(d).

[127] Plaintiff's Request for Judicial Notice in Bifurcated Proceedings, App. at 2054; 2 CR 434.

the fact that the prior case put Dillard's on notice regarding their shoddy and illegal advertising practices, of course they found no malice. Had they been aware of the fact that Dillard's had knowledge of what constituted "misappropriation of likeness," the jury very likely would not have answered Question 4 finding the misappropriation excused by mistake.

### F. DESPITE APPELLANT'S CLEAR PLEA FOR ANY AND ALL DAMAGES PERMISSIBLE UNDER TEXAS LAW THE COURT REFUSED TO CONSIDER DISGORGEMENT OF PROFITS.

The trial court erred in granting Dillard's Bench Brief Regarding Disgorgement of Profits filed on July 12, 2013,[128] because Appellant properly requested disgorgement of profits in each of his three Petitions. On October 15, 2011, Clark filed his Original Complaint where he pleaded for "[a] judgment awarding actual and punitive damages, an accounting of Dillard's profits, disgorgement of those profits, attorneys' fees, pre-judgment and post judgment interest."[129] On September 17, 2012, Clark filed his First Amended Complaint where he pleaded for:

> [a] judgment awarding actual … actual and punitive damages against Campbell for breach of fiduciary duties; or alternatively, contract damages against Defendant

---

[128] Plaintiff's Motion for New Trial dated August 30, 2013, App. at 2148-49; 2 CR 589-601.
[129] Id.

Campbell, plus attorneys' fees, pre-judgment and post-judgment interest **for all claims where such awards are available under Texas law.** *emphasis added.*[130]

Finally on November 29, 2012, Clark filed his Second Amended Complaint where he pleaded for:

> [a] judgment awarding all available damages against all Defendants, … plus attorneys' fees, pre-judgment and post-judgment interest for **all claims where such awards are available under Texas law.** *emphasis added.*[131]

In each of Clark's three Petitions, he clearly and consistently pleaded for disgorgement of profits. In his first Petition Appellant specifically sought disgorgement of profits. In the subsequent two petitions, Appellant pleaded for "all claims where such awards are available under Texas law" thereby encompassing disgorgement of profits. Therefore, the trial court erred in granting Dillard's objection to Appellant's request for disgorgement of profits.

### G. THE COURT OVERRULED APPELLANT'S OBJECTIONS TO JURY QUESTIONS THAT WERE INCORRECT AS A MATTER OF LAW AND WERE INTERNALLY INCONSISTENT.

The trial court erred by overruling Clark's objections to the jury charge. Clark renews all of his objections to the jury charge as reflected

---

[130] Id.
[131] Id.

in the record.[132]  Two jury instructions are particularly serious because they were internally inconsistent, redundant, and led to an inconsistent result.

Question No. 3: Do you find from a preponderance of the evidence that Dillard's misappropriation *was excused?*

Question No. 4: Do you find from a preponderance of the evidence that Dillard's misappropriation *was excused as a result of mistake?*

Questions 3 and 4 are identical except for the four additional words in Question 4 that qualify the word "excused."  In Question 3, the word "excused" is unqualified and, therefore, includes all possible bases for any excuse.  To that question, the jury answered "no": that Dillard's was *not excused* from any possible mistake.  Question 4 asked the same question again, but added the words "as a result of mistake."  This question clearly caused confusion as the jury answered "yes" to this question.  This leaves the record with two internally inconsistent fact findings which lead to two different results with respect to the claims for misappropriation of likeness.

---

[132] *See generally*, Trial Transcript Vol. 11, pp. 27:18 – 32:7, App. at 95-100; RR 11 at 27-32.

Question 4 should not have been presented to the jury because mistake is not a defense to the cause of action for misappropriation of likeness. The elements of a misappropriation of name or likeness claim are:[133]

1. The defendant appropriated the plaintiff's name or likeness for the value associated with it;

2. The plaintiff can be identified from the publication; and

3. The defendant reaped some advantage or benefit.

If Dillard's was not excused from using the images, there was a misappropriation. Whether Dillard's made a mistake is irrelevant. By including Question 4, which was inconsistent with Question 3, the Court created unnecessary confusion and a reversible error.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court of Appeals make the following rulings: (1) that the trial court's order denying Appellant's motion for partial summary judgment be reversed and that the Court of Appeals render judgment that Dillard's misappropriated three of Appellant's images; (2) that the trial court's

---

[133] *Brown v. Ames*, 201 F.3d 654, 657-58 (5th Cir. 2000); *Matthew v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994); *Benavidez v. Anheuser Busch, Inc.*, 878 F.2d 102, 104 (5th Cir. 1989).

order granting in part Dillard's motion for summary judgment, dismissing claims for injunctive relief, unfair business practices and declaratory relief be reversed and remanded for further proceedings; (3) that the trial court's order dismissing TCA from the case be reversed and remanded for further proceedings; (4) that the trial Court's decision to strike Appellant's damages expert the day before trial be reversed and remanded; (5) that the trial court's decision to exclude consequential damages be reversed and remanded for further proceedings; (6) that the trial court's failure to take judicial notice of identified matters be reversed and remanded for further proceedings; (7) that the trial court's decision to overrule Appellant's objections to the court's jury instructions on misappropriation of likeness be reversed; and (8) that the trial court's order denying Appellant's motion for new trial be reversed, and that a new trial proceed.

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of this instrument is being served on a USB drive by United States Mail on this 27th day of March, 2014, upon the following counsel of record for appellees:

Ophelia Camina
Susman Godfrey LLP
901 Main St., Suite 5100
Dallas, TX 75202

Brian A. Sheguit
The Bassett Firm
Two Turtle Creek Village
3838 Oak Lawn Ave., Suite 1300
Dallas, TX 75219

*/s/ Stephen A. Kennedy*
Stephen A. Kennedy
Kennedy Law, P.C.
1445 Ross Avenue, Suite 4950
Dallas, TX 75202
(214) 716-4343
skennedy@saklaw.net
Attorney for Appellant